1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name  Patterson, Jody D.

3        (Last)              (First)           (Initial)

3    Prisoner Number  E-888649  E-88649

4    Institutional Address  Correctional Training Facility

5                  P.O.Box 689, GW-252-L
              Soledad, CA. 93960-0689

*FILED*

*NOV - 1 2007*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

6

7    **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**

*E-filing*

8    Jody D. Patterson
    (Enter the full name of plaintiff in this action.)

9        **CV 07 5579 RMW (PR)**

9    Case No. _____

10        vs.                      (To be provided by the clerk of court)

11    Ben Curry, Warden (A), et al.

11    **PETITION FOR A WRIT**
    **OF HABEAS CORPUS**

12    With Memorandum of Points
    Attached hereto in Support

13        Thereof.

14    (Enter the full name of respondent(s) or jailor in this action)

14    (Evidentiary Hearing Requested)

15

16        Read Comments Carefully Before Filling In

17    When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19    counties:  Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20    San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21    this district if you are challenging the manner in which your sentence is being executed, such as loss of

22    good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were **not** convicted and sentenced in

24    one of the above-named fifteen counties, your petition will likely be transferred to the United States

25    District Court for the district in which the state court that convicted and sentenced you is located.  If

26    you are challenging the execution of your sentence and you are not in prison in one of these counties,

27    your petition will likely be transferred to the district court for the district that includes the institution

28    where you are confined.  Habeas L.R. 2254-3(b).

*ORIGINAL*

PET. FOR WRIT OF HAB. CORPUS    - 1 -

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

<u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

1. What sentence are you challenging in this petition?

    (a)   Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

<u>Orange County Superior Court,</u>    <u>Santa Ana, California</u>

Court                      Location

    (b)   Case number, if known  <u>C-79650</u>

    (c)   Date and terms of sentence <u>March 8, 1991; 7 years to life</u>

    (d)   Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)    Yes <u>XX</u>    No <u>    </u>

Where?

Name of Institution: <u>Correctional Training Facility</u>

Address: <u>P.O. Box 686, Soledad, CA. 93960-0686</u>

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>Attempted Murder; Penal Code Section 664/187</u>

<u> </u>

<u> </u>

PET. FOR WRIT OF HAB. CORPUS      - 2 -

3. Did you have any of the following?

    Arraignment:                                 Yes _X__      No _____

    Preliminary Hearing:                  Yes _X__      No _____

    Motion to Suppress: ( UNKNOWN )      Yes _____      No _____

4. How did you plead?

    Guilty _____      Not Guilty _XX_      Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _XX_      Judge alone_____      Judge alone on a transcript _____

6. Did you testify at your trial?              Yes _XX_      No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment                  Yes _X__      No _____

    (b)    Preliminary hearing           Yes _X__      No _____

    (c)    Time of plea                 Yes _X__      No _____

    (d)    Trial                          Yes _X__      No _____

    (e)    Sentencing                  Yes _X__      No _____

    (f)    Appeal                      Yes _X__      No _____

    (g)    Other post-conviction proceeding    Yes _X__      No _____

8. Did you appeal your conviction?           Yes _X__      No _____

    (a)    If you did, to what court(s) did you appeal?

           Court of Appeal              Yes _X__      No _____

           Year: _1991_      Result: _Affirmed_____

           Supreme Court of California      Yes _X__      No _____

           Year: _1991_      Result: _Affirmed_____

           Any other court             Yes _____      No _XX_

           Year: _____      Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS      - 3 -

1    petition?                                    Yes _____    No _XX_

2    (c)    Was there an opinion?  ʊɴᴋɴᴏᴡɴ  Yes _____    No_____

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4           (Not Applicable Here.)                Yes _____    No _XX_

5           If you did, give the name of the court and the result:

6           This petition raises claims resulting from a parole

7           consideration hearing only.

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?        Yes _XX_    No_____
     Parole hearing

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]    (All state remedies have been exhausted).

16   (a)    If you sought relief in any proceeding other than an appeal, answer the following

17          questions for each proceeding. Attach extra paper if you need more space.

18   I.     Name of Court: Orange County Superior Court

19          Type of Proceeding: Habeas Corpus Petition

20          Grounds raised (Be brief but specific):

21          a. Same as raised herein.

22          b. Case # M-11219

23          c. (See Exhibit "I")

24          d.

25          Result: Denied                        Date of Result: 3-22-07

26   II.    Name of Court: Fourth District Court of Appeal, Div. 3

27          Type of Proceeding: Habeas Corpus Petition

28          Grounds raised (Be brief but specific):

1    a. Same as raised herein

2    b. Case # G038678

3    c. (See Exhibit "J")

4    d.

5    Result: Denied            Date of Result: 6-7-07

6    III.  Name of Court: Supreme Court of California

7    Type of Proceeding: Petition for review

8    Grounds raised (Be brief but specific):

9    a. Same as raised herein

10    b. Case # S153530

11    c. (See Exhibit "K")

12    d.

13    Result: Denied            Date of Result: 8-8-07

14    IV.  Name of Court: None

15    Type of Proceeding:

16    Grounds raised (Be brief but specific):

17    a.

18    b.

19    c.

20    d.

21    Result:            Date of Result:

22    (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                Yes ___    No XX

24    Name and location of court:            Not Applicable

25  B. GROUNDS FOR RELIEF

26        State briefly every reason that you believe you are being confined unlawfully.  Give facts to

27  support each claim.  For example, what legal right or privilege were you denied?  What happened?

28  Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space.  Answer the same questions for each claim.

2  [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:_____ See attached pages_____

6  _____

7  Supporting Facts:____ See attached pages_____

8  _____

9  _____

10 _____

11 Claim Two:_____ See attached pages_____

12 _____

13 Supporting Facts:_____

14 _____

15 _____

16 _____

17 Claim Three:_____ See attached pages_____

18 _____

19 Supporting Facts:_____

20 _____

21 _____

22 _____

23 If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:

25 All grounds stated herein have been exhausted through all state levels.

26 (See Exhibits "I", "J", "K".)

27 _____

28 _____

# TABLE OF CONTENTS.

| | Page. |
|---|---|
| Petition For Writ Of Habeas Corpus Form | 01–06 |
| Table Of Contents | 6a–6b |
| Table Of Authorities | 6c–6d |
| Table Of Exhibits | 6e |
| Claims For Relief (Introduction) | 07 |

**Claim 1:** THE BOARD OF PAROLE HEARINGS' DECISION TO DENY PAROLE IS SUBJECT TO MEANINGFUL JUDICIAL REVIEW.    07

**Claim 2:** THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S FEDERALLY PROTECTED RIGHT TO DUE PROCESS, GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, WHEN IT FOUND PETITIONER UNSUITABLE FOR PAROLE FOR THE SEVENTH TIME, RELYING ON IMMUTABLE FACTORS AND REASONS THAT DO NOT PROVIDE "SOME EVIDENCE" TO SUPPORT THE "CONCLUSION" THAT PETITIONER "WOULD POSE AN UNREASON-ABLE RISK OF DANGER TO SOCIETY OR A THREAT TO PUBLIC SAFETY IF RELEASED FROM PRISON."    08

**Claim 3:** PETITIONER'S COMMITMENT OFFENSE WAS NOT A FIRST DEGREE MURDER; A FELONY MURDER; NOR AN EXECUTION STYLE MURDER, YET PETITIONER HAS SERVED THE MINIMUM TERM FOR SUCH OFFENSES.    11

**Claim 4:** PETITIONER CONTENDS THERE IS NO EVIDENCE IN THE RECORD TO PERMIT HIS "SERIOUS" RULES VIOLATION REPORTS (CDC-115'S) TO BE "SOME EVIDENCE" WITHIN THE MEANING OF **SUPERINTENDENT V HILL** AS AN INDICIA OF RELIABILITY TO PREDICT FUTURE DANGEROUSNESS OR TO BE AN UNREASONABLE RISK UNDER CCR 15, §2402(a).    12

**Claim 5:** THERE IS NO NEXUS BETWEEN THE COMMITMENT OFFENSE, "A REASON-ABLE [DISCIPLINARY] RECORD," AND PETITIONER'S CURRENT PAROLE RISK    15

MEMORANDUM OF POINTS AND AUTHORITIES:    17–37

   A.    STANDARD OF REVIEW.    17

   B.    THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CORPUS CLAIMS SHOULD NOT BE GIVEN AEDPA DEFERENCE BECAUSE IT WAS DERIVED FROM A MISAPPLICATION OF THE "SOME EVIDENCE" STANDARD, AND WAS BASED ON AN UNREASONABLE INTERPRETATION OF INFORMATION NOT VETTED THROUGH FORMAL BRIEFING OR AN EVIDENTIARY HEARING.    19

   C.    PETITIONER HAS A LIBERTY INTEREST IN RELEASE ONTO PAROLE PROTECTED BY THE UNITED STATES CONSTITUTION, FOURTEENTH AMENDMENT.    20

## TABLE OF CONTENTS CONTINUED.

Page

D.   THE STANDARD OF REVIEW FOR DETERMINING WHETHER THE
     BOARD'S CONCLUSION THAT PETITIONER'S RELEASE TO PAROLE
     WOULD "UNREASONABLY" ENDANGER PUBLIC SAFETY IS THE
     UNITED STATES SUPREME COURT'S "SOME EVIDENCE" STANDARD,
     EXPLAINED IN **SUPERINTENDENT V HILL**, 472 U.S. 445,
     454-455 (1985).                                                    22

E.   THE CIRCUMSTANCES OF PETITIONER'S COMMITMENT OFFENSE WAS
     NOT, AT THE TIME OF THE HEARING, SOME EVIDENCE THAT HIS
     RELEASE TO PAROLE WOULD UNREASONABLY ENDANGER PUBLIC
     SAFETY.                                                            25

**Questions Of Law:**

1.   WAS THE SUPERIOR COURT DECISION AND SUBSEQUENT APPELLATE
     AND SUPREME COURT SUMMARY DENIALS AN ABUSE OF DISCRETION
     UNDER CALIFORNIA STATE LAW?                                       26

2.   WAS THE LOWER JUDICIARY'S REFUSAL TO GRANT HABEAS CORPUS
     RELIEF "CONTRARY TO" CONTROLLING U.S. SUPREME COURT
     HOLDINGS, AS APPLICABLE VIA THE 14TH AMENDMENT'S "DUE
     PROCESS" CLAUSE, WHEN DENYING LIBERTY INTEREST IN PAROLE
     BY AFFIRMING THE PAROLE BOARD'S DECISION?                         26

3.   WERE THE LOWER COURT'S REFUSALS TO GRANT HABEAS CORPUS
     RELIEF AN "UNREASONABLE APPLICATION" OF CONTROLLING U.S.
     SUPREME COURT CASES WHICH SHOULD HAVE CONTROLLED LOWER
     DECISIONS AS APPLICABLE VIA THE 14TH AMENDMENT'S "DUE
     PROCESS" CLAUSE WHEN DENYING LIBERTY INTEREST IN PAROLE?          27

4.   DID THE LOWER COURT'S REFUSAL TO GRANT HABEAS CORPUS
     RELIEF ESTABLISH THAT THE ORDERS BECAME AN "UNREASONABLE
     DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE
     PRESENTED" WHEN DENYING LIBERTY INTEREST IN PAROLE AS THE
     JUDICIALLY VAGUE EVIDENCE WAS CONTRADICTED BY "CLEAR AND
     CONVINCING EVIDENCE" TO SUPPORT PETITIONER'S ALLEGATIONS
     OF 14TH AMENDMENT DUE PROCESS VIOLATIONS?                         27

Claims #1-5 Restated With Applicable Federal And State Court Cites.   27-36

Conclusion.                                                            36

Prayer For Relief.                                                     37

Exhibits, Marked "A" Through "K" - See Table Of Exhibits.             39-192

Proof Of Service By Mail.                                             193

## TABLE OF AUTHORITIES.

| FEDERAL CASES. | Pages |
| --- | --- |
| Bell v. Cone, 535 U.S. 685; 122 S. Ct. 1842. | 17 |
| Biggs v. Terhune, (9th Cir. 2003) 334 F. 3d 910. | Passim |
| Board of Pardons v. Allen, (1987) 482 U.S. 369. | Passim |
| Bruce v. Terhune, (9th Cir. 2004) 376 F. 3d 950. | 18 |
| Cato v. Rushen, (9th Cir. 1987) 924 F. 2d 703. | 34 |
| Douglas v. Calif., (1963) 372 U.S. 353. | 18 |
| Earp v. Oronski, (9th Cir. 2005) 431 F. 3d 1158. | 19, 20 |
| Edwards v. Balisok, (1982) 520 U.S. 641. | 18 |
| Fisher v. Roe, (9th Cir. 2001) 263 F. 3d 905. | 18 |
| Greenholtz v. Nebraska, (1979) 442 U.S. 1. | Passim |
| Irons v. Warden, (N.S. Cal. 2004) 358 F. Supp. 2d 936. | Passim |
| Jancsek v. Oregon Bd. of Parole, (9th Cir, 1987) 833 F. 2d 1389. | 33 |
| Keeney v. Tamayo-Reyes, (1992) 504 U.S. 1. | 19 |
| Lockyer v. Andrade, (2003) 538 U.S. 63. | 17 |
| Luna v. Cambra, (9th Cir. 2002) 306 F. 3d 954. | 18 |
| Martin v. Marshall (I),(II), 431 F. Supp. 2d; 448 F. Supp. 2d. | 16 |
| Masoner v. State, (C.C. Cal. 2004) WL 1080176. | 35 |
| McQuillion v. Duncan, (9th Cir. 2002) 306 F. 3d 895. | Passim |
| Morrissey v. Brewer, (1972) 408 U.S. 471. | 29 |
| Sandin v. Conner, (1985) 515 U.S. 472. | 21 |
| Sass v. Cal. Bd. Prison Terms, (9th Cir. 2006) 461 F. 3d 1123. | Passim |
| Schweiker v. McClure, (1982) 456 U.S. 188. | 18 |
| Shackleford v. Hubbard, (9th Cir. 2000) 234 F. 3d 1072. | 18 |
| Superintendent v. Hill, (1985) 472 U.S. 445. | Passim |
| Taylor v. Maddox, (9th Cir. 2004) 336 F. 3d 992. | 20 |
| Townsend v. Sain, (1963) 372 U.S. 293. | 19 |

**TABLE OF AUTHORITIES CONTINUED.**

FEDERAL CASES CONTINUED.                                          **Pages**

Van Tran v. Lindsey, (9th Cir. 2000) 212 F. 3d 1143.                  18

Viasak v. Superior Ct. of LA., (9th Cir. 2003) 329 F. 3d 683.        18

Williams v. Taylor, (2000) 519 U.S. 362.                           17, 18

Ylst v. Nunnemaker, (1991) 501 U.S. 797.                             18

CALIFORNIA CASES.

In re Dannenberg, (2005) 34 Cal. 4th 106.                          Passim

In re DeLuna, (2005) 126 Cal. App. 4th 585.                          33

In re Elkins, 50 Cal. Rptr. 3d 503.                                  24

In re Johnson, 41 Cal. Rptr. 2d 449.                                 33

In re Lee, 40 Original.                                              23

In re Powell, (1988) 45 Cal. 3d 894.                                 28

In re Ramirez, (2001) 94 Cal. App. 4th 549.                          31

In re Rosencrantz, (2002) 29 Cal. 4th 616; 128 Cal. Rptr. 2d 137.  Passim

In re Schoengarth, (1967) 66 Cal. 2d 295.                            29

In re Scott, "Scott II", 133 Cal. App. 4th 753; 2005 DJDAR 12450.  29, 35

In re Seabock, (1983) 140 Cal. App. 3d 29.                           30

In re Sena, (2001) 115 Cal. Rptr. 2d 25.                             28

In re Smith, E., (2003) 114 Cal. App. 4th 343; 7 Cal. Rptr. 3d 673.  28, 36

In re Tripp, (2007) 150 Cal. App. 4th 306.                           25

In re Van Houten, (2004) 116 Cal. App. 4th 339; 10 Cal. Rptr. 3d 406.  31

People v. Vickers, (1972) 8 Cal. 3d 451.                             29

1                          **TABLE OF EXHIBITS.**

2                                                                    **Pages.**

3    Exhibit "A" - Abstract of Judgement/Court Minute Order.        39-41

4    Exhibit "B" - August 2, 2006 Hearing Transcripts/B.P.H. 1005(b).   42-125

5    Exhibit "C" - 2006 Counselor Evaluation Report.                126-136

6    Exhibit "D" - 2006 Psychological Evaluation.                   137-142

7    Exhibit "E" - 2003/04 Psychological Evaluation.                143-151

8    Exhibit "F" - 2000/01 Psychological Evaluation.                152-159

9    Exhibit "G" - Previous BPT/BPH Hearing 1001's/Decisions.       160-174

10        (Initial) - Oct. 17, 1995 - Denied: 2 Years.              161-162
          (1st Sub) - Sep. 24, 1997 - Stipulation: 1 Year.         163-165
11        (2nd Sub) - Dec. 02, 1998 - Denied: 4 Years (Later Reversed)   166-167
          (3rd Sub) - Jan. 23, 2001 - Denied: 2 Years.             168-169
12        (4th Sub) - Jan. 22, 2003 - Stipulation: 1 Year.         170-172
          (5th Sub) - Jul. 22, 2004 - Denied: 2 Years.             173-174

13

14   Exhibit "H" - CDC-128-B Proof of receipt of BPH Transcripts.   175-177

15   Exhibit "I" - Superior Court denial of Habeas Petition.        178-186

16   Exhibit "J" - Court of Appeals denial of Habeas Petition.      187-188

17   Exhibit "K" - Cal. Supreme Court denial of Petition For Review.   189-192

18

19

20

21

22

23

24

25

26

27

28

**CLAIMS FOR RELIEF:**

**INTRODUCTION**

COMES NOW, Jody D. Patterson (hereafter "Petitioner"), with his federal Petition for Writ of Habeas Corpus, 28 U.S.C. 2254, challenging the California Board of Parole Hearings (hereafter Board/BPH) finding him unsuitable for parole for the seventh time on immutable factors and reasons that do not provide "some evidence" to support the statutory exception that Petitioner's release to the strict supervision of parole would unreasonably endanger public safety.

**CLAIM 1.**

THE BOARD OF PAROLE HEARINGS' DECISION TO DENY PAROLE
IS SUBJECT TO MEANINGFUL JUDICIAL REVIEW.

Petitioner was convicted on January 28, 1991 by jury trial of Attempted Murder of Matt Mabry in the Superior Court of Orange County and sentenced to a term of life with the possibility of parole on March 8, 1991 (See Abstract of Judgement attached hereto as Exhibit "A"). The Court ordered commitment to state prison and ordered 560 days of pre-prison credit to be applied (Exhibit "A"). Petitioner was received by the California Department of Corrections and Rehabilitation (hereafter CDCR) on March 14, 1991. CDCR computed the start of Petitioner's life sentence at March 14, 1991 and set his minimum earliest parole date (hereafter M.E.P.D.) at August 26, 1996. Petitioner has been incarcerated continuously since his arrest for the commitment offense on February 28, 1990. Therefore, the determinant term under P.C. §664/187 is long since exhausted.

Petitioner had his Initial Parole Consideration Hearing on October 17, 1995, with subsequent hearings in 1997, 1998, 2001, 2003, 2004, and the hearing being addressed within this petition was held on August 2, 2006.

Petitioner claims herein that the 2006 hearing panel denied a parole release date without benefit of due process. In such a case, petition for writ

7

1   of habeas corpus in the state and federal courts is the proper recourse.

2   Petitioner has a liberty interest in a parole release date under the state

3   and federal constitutions.  The decision to deprive petitioner of this liberty

4   interest is due meaningful judicial scrutiny to assure that the August 2, 2006

5   BPH decision comports with due process of law.

6                              **CLAIM 2.**

7            THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S
             FEDERALLY PROTECTED RIGHT TO DUE PROCESS, GUARANTEED
8            BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED
             STATES CONSTITUTION, WHEN IT FOUND PETITIONER UNSUITABLE
9            FOR PAROLE FOR THE SEVENTH TIME, RELYING ON IMMUTABLE
             FACTORS AND REASONS THAT DO NOT PROVIDE "SOME EVIDENCE"
10           TO SUPPORT THE "CONCLUSION" THAT PETITIONER "WOULD POSE
             AN UNREASONABLE RISK OF DANGER TO SOCIETY OR A THREAT
11               TO PUBLIC SAFETY IF RELEASED FROM PRISON."

12       There are 15 (fifteen) regulatory factors which the BPH is required to

13   consider prior to rendering a decision regarding a prisoner's parole suit-

14   ability and , therefore, **current** risk assessment and they are given in the

15   California Code Of Regulations, Title 15 (hereafter CCR 15), §2402 (c) & (d).

16   Of the 6 (six) unsuitability factors listed in CCR 15 §2402 (c), the BPH had

17   sufficient evidence for only 1 (one): CCR 15, §2402(c)(1), commitment offense.

18   By the reasoning and evidence reflected in the decision, the BPH's sole fac-

19   tor for denying parole was the commitment offense because the evidence for

20   the 2 (two) other unsuitability factors (the motive was trivial, and discip-

21   linary history) used by the BPH, was insufficient as a matter of fact and law

22   (see Exhibit "B", 2006 BPH hearing transcripts (hereafter HT:2006), pg. 75,

23   lns. 13-26; pg. 76, lns. 1-9).

24       The BPH panel made very positive comments regarding petitioner's prison

25   program (HT:2006, pg. 76, lns. 21-26; pg. 77, lns. 1-13 & 24-26), but expressed

26   concern over petitioner's "serious disciplinary violations in prison." (HT:

27   2006, pg. 77, lns. 14-24), yet concluded that petitioner has a reasonable

28   record (HT:2006, pg. 77, lns. 22-23).

                                      8

1    To the issue of petitioner's "reasonable [disciplinary] record", this

2  record consists of 3 (three) CDC 115's which are as follows: 1). 1992 for

3  gambling for push-ups; 2). 2002 for refusing to work; and 3). 2004 for dis-

4  obeying orders which was reduced to an administrative 115 (a blue 128-A).

5  CCR 15 §2402 (c)(6) has been interpreted to mean violence in prison, not the

6  type of administrative discipline or non-violent rule infractions mentioned

7  by the panel.  Therefore, the BPH's evidentiary basis seems more relevant to

8  CCR 15 §2402 (d)(9) than any other factor, which indicates petitioner's lack

9  of serious prison misconduct tends to show his suitability, not unsuitability

10  as the BPH panel at petitioner's August 2, 2006 hearing did not explicitly

11  reflect a decision finding true CCR 15 §2402 (c)(6).

12      In contrast, the BPH panel generally found true many of the applicable

13  suitability factors under CCR 15 §2402 (d).  For example: the BPH stated,

14  "You have presented to this board viable residential plans, as well as, plans

15  for your transition into society... and in the marketable skills you have.

16  And you certainly have extensive, extended family support."  This falls under

17  CCR 15 §2402 (d)(8) parole plans or marketable skills, both of which the

18  panel found the record to support.

19      It is apparent from the hearing transcripts that the BPH's many positive

20  comments can be tethered to a number of other regulatory factors reflected by

21  decision.  CCR 15 §2402 (d)(1) & (6): no record of assaultive behavior as a

22  juvenile; lack of criminal history (HT:2006, pg. 76, lns. 17-18; see also

23  Exhibit "C", 2006 board report, pg. 2; and Exhibit "E", 2003 mental Health

24  evaluation, pg. 6).  §2402 (d)(2) stable social history.  The panel did not

25  find to the contrary (HT:2006, pg. 78, lns. 6-7).  §2402 (d)(8) understanding

26  and plans for the future (HT:2006, pg. 78, lns 2-7).  §2402 (d)(9) Institutional

27  behavior (HT:2006, pg. 76, lns. 21-26; pg. 77, lns. 1-13; pg. 78, lns. 15-22).

28  However, contrary to their required duty, the BPH's decision failed to reflect

1   as is required by law, consideration of 2 (two) crucial factors in their asse-

2   ssment of petitioner's **current** risk to public safety.  First is CCR 15 §2402

3   (d)(3) signs of remorse and, second,CCR 15 §2402(d)(7) age.

4        As to remorse: despite the historical and regulatory significance of this

5   factor, as it relates to current assessments, the 2006 panel did not even

6   mention remorse nor question petitioner on this factor;  Petitioner's counsel

7   had to do this for them (HT:2006, pg. 55, lns. 11-25).  The board and psych

8   reports (Exhibits "C","D","E", and "F"), letters from the public, prior BPH

9   decisions, all speak of petitioner's remorse.

10       Similarly, the 2006 panel's decision reflects no consideration of the

11  import of maturity and age in its assessment of petitioner's **current** risk to

12  public safety.  The regulation CCR 15 §2402 (d)(7) speaks to a prisoner's age,

13  that it "reduces the probability of recidivism."  The importance of consider-

14  ing this factor is underscored because, as shown later, the probative value

15  of petitioner's offense as a predictor of his **current** dangerousness is dimin-

16  ished by his age at the time of the offense and his current maturity.  Petit-

17  ioner was 26 at the time of the offense.  Given petitioner's relatively young

18  age, made even younger by drug and alcohol use at the time of the offense,

19  and the focus the governing regulations in general give to the repair and

20  reformation of character difficiencies of the young offender, and the fact

21  that petitioner is now 43 years old and drug and alcohol free for nearly 17

22  years, it seems very unfair that the BPH panel's decision did not reflect any

23  consideration of this factor.

24       It cannot, therefore, be said that the BPH has fairly given individualized

25  consideration to all statutory and regulatory factors in its assessment of

26  Petitioner's **current** dangerousness and risk to public safety.  By relying

27  solely on the commitment offense for the 7th (seventh) time to deny petitioner

28  his federally protected liberty interest in a parole date, the BPH's failure

1  to reflect consideration of many suitability factors to mitigate the **current**

2  risk to public safety represented by the offense is a violation of due process

3  as is protected under the United States and California constitutions.

### CLAIM 3.

5  PETITIONER'S COMMITMENT OFFENSE WAS NOT A FIRST DEGREE
MURDER; A FELONY MURDER; NOR AN EXECUTION STYLE MURDER,

6  YET PETITIONER HAS SERVED THE MINIMUM TERM FOR SUCH OFFENSES.

7  The hearing transcripts themselves, on page 1, make clear the evaluation

8  of the gravity of petitioner's offense was to be based upon Attempted Murder

9  (HT:2006, pg. 1; see also Exhibit "A" -Abstract of Judgement). Yet, the BPH

10  panel held that petitioner was an unreasonable risk to public safety (HT:2006,

11  pg. 75, lns. 11-13), meaning that they made a determination of the gravity of

12  petitioner's offense under Penal Code §3041(b) while the facts of the attempted

13  murder may justify an initial refusal to grant parole, it has become question-

14  able under a first degree murder standard.

15  Petitioner became eligible for parole under PC. §190 et seq. on August 26,

16  1996 under a sentence of life with the possibility of parole in 7 years.

17  Petitioner has had 7 (seven) parole hearings. Had petitioner been convicted

18  of First Degree Murder, instead of attempted murder, he would have become

19  eligible for parole in August of 2006. Given that initial parole hearings

20  are held 13 months before the MEPD, petitioner's August 2, 2006 hearing is

21  very close to what would have been his initial hearing had he been convicted

22  of First Degree Murder.

23  The BPH panel held Petitioner's offense to be especially cruel and callous

24  and compared it to an execution style murder. Under CCR 15, §2402 (c)(1),

25  especially heinous manner and circumstances may be used to determine that the

26  gravity of the offense (PC. §3041 (b)) is such that its implications for public

27  safety require a more lengthy period of incarceration. It's another matter

28  entirely and questionably whether the callousness and motivation for the

1   offense were as grave a threat to public safety as one who actually murdered

2   someone or committed a felony murder.  Petitioner should have had the gravity

3   of his actual offense and his current risk to public safety evaluated and

4   considered in light of first degree murder standards now that he has met

5   eligibility for parole under first degree murder.

6       Petitioner's offense is not felony murder and noone, not even the District

7   Attorney or the sentencing judge, has ever alleged that any special circum-

8   stances or any PC. §189 felony occurred during the commission of Petitioner's

9   offense.  Therefore, petitioner's offense should have been considered in light

10  of all first degree murders to see if it warranted a more lengthy sentence

11  than they.  The BPH has and does find first degree murderers suitable for parole.

12  They also find second degree murderers suitable for parole, with less time

13  served than petitioner in some cases.  In light of these facts, and consider-

14  ing no murder was committed in petitioner's offense, petitioner should have

15  been found suitable for parole, or, in the least, his offense, held up against

16  other —more heinous crimes of murder, should no longer stand as a justifyable

17  reason to deny parole or be used to justify a finding of unreasonable risk.

18      Based on the aforementioned, requiring petitioner to serve out a term

19  comparable to a 25 to life sentence, yet not comparing petitioner's offense

20  to other first degree murderers, is a serious violation of due process and is

21  vindictive.  Petitioner did not murder his victim yet the BPH is treating him

22  as if he did and should be incarcerated as if he did.

23                          **CLAIM 4.**

24          PETITIONER CONTENDS THERE IS NO EVIDENCE IN THE RECORD TO
            PERMIT HIS "SERIOUS" RULES VIOLATION REPORTS (CDC-115's)
25          TO BE "SOME EVIDENCE" WITHIN THE MEANING OF **SUPERINTENDENT**
            **v HILL** AS AN INDICIA OF RELIABILITY TO PREDICT FUTURE
26          DANGEROUSNESS OR TO BE AN UNREASONABLE RISK UNDER CCR15, §2402 (a).

27      CCR 15, §2402 (a) states: "General, the panel shall first determine whether

28  the life prisoner is suitable for release on parole. Regardless of the length

1   of time served a life prisoner shall be found unsuitable for and denied parole

2   if in the judgement of the panel the prisoner will pose an unreasonable risk

3   of danger to society if released from prison."  Therefore, the BPH's rationale

4   must reasonably relate to an unreasonable risk of danger as supported by cogn-

5   izable evidence.  However, the procedure doesn't stop here.  CCR 15, §2402 (c)

6   states: "Circumstances tending to show unsuitability, (6) Institutional behavior

7   The prisoner has engaged in serious misconduct in prison or jail."

8       Reciprocal and counter to the BPH's use of prison misbehavior, a lack of

9   serious misconduct indicates an enhanced ability to function within the law

10  upon release.  As discussed in Claim 2 of this petition, CCR 15, §2402 (c)(6)

11  has been interpreted to mean violence in prison.  The BPH panel at petitioner's

12  August 2, 2006 hearing was aware that none of petitioner's disciplinary reports

13  were for violence or for drug or alcohol use as they had CDCR generated board

14  and psychological reports that detailed petitioner's disciplinary history, as

15  well as, petitioner's central file.  In contrast to the panel's claims, Dr. J.

16  Steward, Psy.D. stated:

17          "This is his [Petitioner] first incarceration and he
        has not received any significant disciplinaries in

18          the past 11 years.  Further, none of the disciplinaries
        have been of a violent nature." (Exhibit "E", pg. 6, ¶ A)

19

20    Dr. Joe Reed, Ph.D. concurred, stating basically the same thing in his

21  report (Exhibit "F", pg. 5, part A, ¶ 3).  Further, the primary report prepared

22  by staff psychologist Lance Portnoff, Ph.D. (primary, in that, it was prepared

23  specifically for the August 2, 2006 hearing), Dr. Portnoff stated:

24          "...this inmate's violence potential is nil.  In the
        16 years since the commitment offense, he has not

25          demonstrated any aggressive behavior as evidenced in
        his central file disciplinary section." (Exhibit "D", pg. 3)

26

27    Dr. Portnoff further stated:

28          "Based upon his lack of prior aggressive offenses and lack

1          of subsequent aggressive behavior, it seems
       clear that the commitment offense was not the product
2          of an habitually aggressive criminally oriented
            individual, but rather an aberration secondary to
3       substance abuse and substance-induced mental disorder."
                    (Exhibit "D", pg. 4, ¶ 1)

4

5      In Superintendent v Hill, it was stated: "We hold that the requirements of

6  due process are satisfied if some evidence supports the decision." This "some

7  evidence" test necessitates the Board showing/establishing how petitioner's

8  non-violent disciplinaries is evidence to deduce/support an unreasonable risk

9  to society if released.  These so-called "serious" CDC-115's being used to deny

10  parole are not a felony or misdemeanor infractions amounting to a public crime.

11      Based on the aforementioned and the fact that 3 (three) prison psychologists

12  all concur that petitioner's 3 (three) disciplinaries were not violent or

13  significant and that petitioner's violence potential is "nil" or "no more than

14  the average citizen," the BPH's use of petitioner's disciplinary history as

15  some evidence should not be found to have merit and should be rejected.  The

16  BPH panel stated that petitioner's disciplinary record was "a reasonable rec-

17  ord" (Exhibit "B", HT:2006, pg. 77, lns. 22-23).  The panel determined that a

18  "reasonable [disciplinary] record" posed an unreasonable threat to public

19  safety.  This meets the criteria for capricious and arbitrary, and violates

20  petitioner's right to a fair hearing and his right to due process and his

21  protected liberty interest in parole.

22      In the superior court's denial the judge linked petitioner's disciplinary

23  history with his crime.  This was a finding by a previous panel and not the

24  finding at the August 2, 2006 hearing in question.  Petitioner received a

25  CDC-115 in 2002 for refusing to work. Petitioner only received this write-up

26  after several attempts to be reassigned to a job that permitted him to obtain

27  adequate sleep as the assignment that he currently held required him to work

28  all night long afterwhich he would have to attempt to sleep in a building

1  that was extremely noisy. Petitioner's attempt to rectify the issue was met

2  with resistance and petitioner made the decision to quit the job assignment.

3  Petitioner did not then attempt to kill his supervisor as was the case in 1990.

### CLAIM 5.

THERE IS NO NEXUS BETWEEN THE COMMITMENT OFFENSE, "A
REASONABLE [DISCIPLINARY] RECORD," AND PETITIONER'S
CURRENT PAROLE RISK.

7       There must be some basis in fact for the BPH to conclude in 2006 that an

8  admittedly serious crime in February of 1990 is probative of petitioner's

9  unreasonable risk to public safety. However, there is no rational argument

10  or any evidence cited in the BPH's decision to connect the 1990 offense with

11  any specific threat to public safety or to demonstrate any specific risk to

12  public safety.

13      All the information received from the CDCR by the BPH is supportive of

14  petitioner's release. The only opposition to release came from the victim

15  and the Deputy District Attorney and these will most likely always be in

16  opposition. The psychological report prepared for the hearing is supportive

17  of release. In fact, all 3 (three) of the psych. reports attached to this

18  petition (Exhibits "D", "E", and "F") are supportive of release. The counselor

19  prepared board reports are also supportive of release. Based on the fact the

20  experts hired by the CDCR and the BPH found petitioner posed no more of a

21  threat to public safety than the average citizen and the fact the counselors

22  did not refute those claims, the attempt at a nexus by the BPH does not stand.

23      Concomittant with this conclusionary stance, The BPH identified not one

24  circumstance of the crime which currently existed and was operating to create

25  the probability of petitioner being a current risk to public safety. The BPH

26  did not identify any post-conviction circumstance or regulatory factor curren-

27  tly existed and was operating to create the probability of petitioner being a

28  risk to public safety.

1    The BPH did not establish by any evidence or argument in what manner the

2    circumstances of the crime would require a particular rehabilitation goal to

3    be reached.  Under this state of affairs, none of petitioner's rehabilitation

4    is relevant to suitability; no rehabilitation could theoretically make petit-

5    ioner less of a risk to public safety.  Other than a change in personality on

6    some future panel who arbitrarily and capriciously decides petitioner's gains

7    are now handled, petitioner will immutably be as much a threat on the day he

8    dies, years in the future, as he was on February 28, 1990.  The BPH's decision

9    makes a mockery of the rehabilitative goals of the parole system.

10    The BPH has failed to give petitioner's rehabilitation individualized

11    consideration in the context of the parole system's goal of rehabilitation

12    and return to society.  Therefore, petitioner has been unfairly denied his

13    liberty interest in parole.

14                              **PRAYER FOR RELIEF.**

15    WHEREFORE, Petitioner respectfully requests that the petition for writ of

16    habeas corpus be granted, and that he be ordered released from custody forth-

17    with as remand to the BPH for reconsideration and subsequent review by the

18    Governor would be an act in futility (See **Martin v Marshall (I)**, 431 F.Supp.

19    2d 1038, 1046-1048 (N.D. Cal. 2006)).  ["The no-parole policy for murders

20    was initiated by Governor Wilson and continued under Governor Davis."]; See

21    also the subsequent "MEMORANDUM & ORDER Re: Request for modification of judge-

22    ment," **Martin v Marshall (II)**, 448 F.Supp. 2d 1143, 1144-1145 (N.D. Cal. 2006)

23    ["In sum, the Board appears to have capitulated to the blanket no-parole

24    policy described by this court in its previous order, abandoning its role as

25    an independent assessor of petitioner's [parole] eligibility"].)  Or, in the

26    alternative, an evidentiary hearing be ordered and counsel appointed.

27    Date: 10-25-07          ,                Respectfully Submitted,

28                                            Jody D. Patterson,

**16**

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.

### **STANDARD OF REVIEW.**

A district court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. §2254 (d).

The United States Supreme Court has explained that section "2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." (**Bell v Cone**, 535 U.S. 685, 694, 122 S.Ct. 1842 (2002).) Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. (**Williams v Taylor**, 519 U.S. 362, 412-413 (2000); See **Lockyer v Andrade**, 538 U.S. 63 (2003).) Section 2254 (d) applies to a habeas petition from a state prisoner challenging the dnial of parole. (See, **Sass v California Board of Prison Terms**, 461 F.3d 1123, 1126-1127 (9th Cir. 2006).)

While only Supreme Court precedent is controlling under the AEDPA, other case law is persuasive authority "for purpose of determining whether a particular state court decision is an unreasonable application of Supreme Court

17

1   law." (**Viasak v Superior court of California ex reel. County of Los Angeles**,

2   329 F.3d 683, 687 (9th Cir. 2003) (quoting **Luna v Cambra**, 306 F.3d 954, 960

3   (9th Cir. 2002) (internal quotation marks and citation omitted), **Amended**, 311

4   F.3d 928 (9th Cir. 2002)); See **Bruce v Terhune**   376 F.3d 950, 956 (9th Cir.

5   2004) ["Although only the Supreme Court's precedents are binding on state

6   courts under AEDPA, our precedents may provide guidance as we review state-

7   court determinations."].)  The requirement for federal precedent is not limited

8   to a precise ruling on similar facts, rather, it is enough that the United

9   States Supreme Court has established the Constitutional principle or frame-

10  work for the issue that would reasonably apply to exigent facts and claims.

11  (**Williams v Taylor**, 519 U.S. at 408-409; **Van Tran v Lindsey**, 212 F.3d 1143,1154

12  (9th Cir. 2000).)  As the Ninth Circuit Court recently noted, it is sufficient

13  if the Supreme Court "has... set forth a working Constitutional standard by

14  which to evaluate" the petitioner's claim. (**Fisher v Roe**, 263 F.3d 905, 915

15  (9th Cir. 2001).)  There is no question that the Supreme Court has done that

16  in **Greenholtz, ante**, and **Allen, ante**, in establishing the framework for deter-

17  mining liberty interests, but also in **Edwards v Balisok**, 520 U.S. 641, 657 (1982)

18  (explaining the "some evidence" standard and cautioning that it is a standard

19  of judicial review only and does not act as a substitute for other due process

20  requirements) (emphasis added); or **Douglas v California**, 372 U.S. 353, 358

21  (1963) ("meaningless rituals" violate due process); or **Schweiker v McClure**,

22  456 U.S. 188, 195 (1982) (right to fair and impartial decision-maker); or

23  other similar cases.

24      Where, as in petitioner's case here (Exhibit "K"), a high state court has

25  denied a claim without explanation, federal courts "look through" that

26  denial to the last reasoned state decision. (Exhibit "I").  (**See Ylst v**

27  **Nunnemaker**, 501, 797, 803-806 (1991); **Shackleford v Hubbard**, 234 F.3d 1072,

28  n. 2 (9th Cir. 2000), cert. Denied, 534 U.S. 944 (2001).)

**B.**
THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
CORPUS CLAIMS SHOULD NOT BE GIVEN AEDPA DEFERENCE
BECAUSE IT WAS DERIVED FROM A MISAPPLICATION OF THE
"SOME EVIDENCE" STANDARD, AND WAS BASED ON AN
UNREASONABLE INTERPRETATION OF INFORMATION NOT
VETTED THROUGH FORMAL BRIEFING OR AN EVIDENTIARY HEARING.

Petitioner filed a Petition for Writ of Habeas Corpus with the Orange
County Superior Court on February 20, 2007. The petition was denied on March
22, 2007 without formal briefing or an evidentiary hearing. (Exhibit "I").
The State Court of Appeal and the California Supreme Court summarily denied
petitioner's petitions. (Exhibits "J, K"). The state courts, therefore, have
not properly adjudicated petitioner's claims that no evidence, with an indicia
of reliability, or rational nexus to the Board's conclusions, supported the
Board's conclusions that petitioner's release would currently pose an unreason-
able endangerment to public safety. (**Superintendent v Hill**, 472, U.S. 445, 454-
455 (1985).) Petitioner submits that an evidentiary hearing is necessary.

A petitioner on federal habeas corpus is entitled to an evidentiary hearing
where the petitioner establishes a "colorable" claim for relief, and where the
petitioner has never been accorded a state or federal hearing on his claims.
(**Earp v Oronski**, 431 F.3d 1158, 1167 (9th Cir. 2005), citing **Townsend v Sain**,
372 U.S. 293 (1963) and **Keeney v Tamayo-reyes**, 504 U.S. 1, 5 (1992).) In
stating a "colorable" claim, a petitioner is merely required to allege specific
facts which, if true, would entitle him to relief. (**Ibid.**) Granted, under the
AEDPA, a federal court is not required to order a hearing where the petitioner
failed to develope the facts in state court. In such cases, the federal court
accords a presumption of correctness to the facts found by the state court,
and need not hold an evidentiary hearing unless those facts are rebutted by
clear and convincing evidence. On the other hand, No AEDPA deference is due
where the state has made an "unreasonable" determination of the facts; and:
"[w]here a state court makes evidentiary findings without holding a hearing

1 | and giving petitioner an opportunity to present evidence, such findings clearly
2 | result in an 'unreasonable determination' of the facts." (**Taylor v Maddox**, 336
3 | F.3d 992, 1001 (9th Cir. 2004).)

4 |     In sum, an evidentiary hearing is required under the AEDPA "where the
5 | petitioner establishes a colorable claim for relief and has never been accorded
6 | a state or federal hearing on his claim." (**Earp v Oronski**, 431 F.3d, at 1167)

7 |     The state courts failed to hold an evidentiary hearing on state habeas
8 | corpus. Therefore, the courts did not determine the decisive and operative
9 | "facts" upon which a denial of petitioner's constitutional claims could legit-
10 | imately be based. This failure was not due to any fault of petitioner, who
11 | was not even accorded a formal "Order To Show Cause" (Cal. Rules of Court,
12 | rule 4.551 et Seq.) at any level of state exhaustion of remedies (Exhibits
13 | I,J,K), even though petitioner requested such in the prayer for relief of
14 | each petition.

15 |     To the limited extent the state courts did determine the operative "facts"
16 | regarding petitioner's habeas corpus claims, those facts were based upon
17 | unreasonable determinations of exhibits presented and are contradicted by
18 | clear and convincing, contradictory evidence submitted in the petition herein.
19 | Petitioner is, therefore, entitled to an evidentiary hearing in this court
20 | before this court can make any credibility determination on the facts alleged
21 | in the petition and supporting exhibits.

22 |
### C.

PETITIONER HAS A LIBERTY INTEREST IN RELEASE ONTO
PAROLE PROTECTED BY THE UNITED STATES CONSTITUTION,
FOURTEENTH AMENDMENT.

25 |     The Fourteenth Amendment provides that no state may "deprive any person of
26 | life, liberty, or property, without due process of law." (U.S. Const., Amend.
27 | XIV, §1.) In **Greenholtz v Inmates of the Nebraska Penal and Correctional**
28 | **Complex**, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a

1  liberty interest in discretionary parole that was protected by the Due Process

2  Clause.  The right was created by the "expectancy of release provided in the

3  [Nebraska parole statute.]"  That statute provided that the parole board

4  "shall order" release of eligible inmates unless that release would have

5  certain negative impacts. (**Id.** at 11-12.)  The supreme court returned to the

6  issue in **Board of Pardons v Allen**, 482 U.S. 369 (1987).  There it held that

7  a similar liberty interest was created even though the parole board had great

8  discretion. (**Id.** at 381.)  For parole decisions, this mode of analysis survived

9  the Supreme Court's later rejection of it for prison disciplinary decisions in

10  **Sandin v conner**, 515 U.S. 472 (1995).  **Biggs v Terhune**, 334 F.3d 910, 914 (9th

11  Cir. 2003), (**Sandin** "does not affect the creation of liberty interests in

12  parole under **Greenholtz** and **Allen**.").

13      While there is "no constitutional or inherent right of a convicted person

14  to be conditionally released before the expiration of a valid sentence,"

15  **Greenholtz v Inmates of Nebraska Penal and Corr. Complex**, 442 U.S. 1, 7 (1979)

16  a state's statutory parole scheme, if it uses mandatory language, may create

17  a presumption that parole release will be granted when or, unless certain

18  designated findings are made, and thereby give rise to a constitutionally

19  protected liberty interest, See **Board of Pardons v Allen**, 482 U.S. 369, 376-

20  378 (1987) (Montana parole statute providing that board "shall" release pri-

21  soner, subject to certain restrictions, creates due process liberty interest

22  in release on parole).  In such a case, a prisoner has liberty interest in

23  parole that cannot be denied without adequate procedural due process protect-

24  ions. See **Allen**, 482 U.S. at 373-381; **Greenholtz**, 442 U.S. at 11-16.

25      Petitioner submits that California's parole scheme uses mandatory language

26  and is similar to the scheme in **Allen** and **Greenholtz** which the United States

27  Supreme Court held gave rise to a protected liberty interest in release on

28  parole.  In California, the panel or board "shall set a release date unless

1   it determines that the gravity of the current convicted offense or offenses,

2   or the timing and gravity of current or past convicted offense or offenses,

3   is such that consideration of the public safety requires a more lengthy

4   period of incarceration for this individual, and that a parole date, there-

5   fore, cannot be fixed at this meeting." Cal. Penal Code §3041(b).  Under the

6   clearly established framework of **Allen** and **Greenholtz**, "California's parole

7   scheme gives rise to a cognizable liberty interest in release on parole."

8   **McQuillion v Duncan**, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme requires

9   that parole release be granted unless the statutorily defined determination

10  (that considerations of public safety forbid it.) is made.  (**Ibid.**; **Biggs v**

11  **Terhune**, 334 F.3d 910, 915-916 (9th Cir. 2003) [Finding initial refusal to

12  set parole date for prisoner with fifteen-to-life sentences implicated petit-

13  ioner's liberty interest].)  The United States Court of Appeals for the Ninth

14  Circuit revisited this matter when the board asserted that the California

15  Supreme Court interpreted state statue and code to be such that NO presum-

16  ption or liberty interest in parole release was created for indeterminately

17  sentenced prisoners.  This argument was rejected. **See Sass v California Bd.**

18  **of Prison Terms**, 461 F.3d 1127-1128 (2006).

19                                        **D.**
                       THE STANDARD OF REVIEW FOR DETERMINING WHETHER
20                     THE BOARD'S CONCLUSION THAT PETITIONER'S RELEASE
                       TO PAROLE WOULD "UNREASONABLY" ENDANGER PUBLIC
21                      SAFETY IS THE UNITED STATES SUPREME COURT'S
                          "SOME EVIDENCE" STANDARD, EXPLAINED IN
22                     **SUPERINTENDENT V Hill**, 472 U.S. 445, 454-455 (1985)

23  Petitioner contends that his due process rights were violated when he was

24  denied parole for the 7th time because of the immutable circumstances of his

25  criminal conviction.

26  The Supreme Court has clearly established that a parole board's decision

27  deprives a prisoner of due process if the board's decision is not supported by

28  "some evidence"in the record", or is "otherwise arbitrary." **Irons v Carey**, 479

                                        22

1  F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disc-
2  iplinary hearings as outlined in **Superintendent v Hill**, 472 U.S. 445, 454–455
3  (1985); **McQuillion v Duncan**, 306 F3d 895, 904 (same).  The evidence underlying
4  the board's decision must also have "some indicia of reliability" rationally
5  related to the conclusion that petitioner's release would unreasonably endanger
6  public safety. **McQuillion**, 306 F.3d at 904; **Biggs v Terhune**, 334 F.3d 910, 915.
7  The some evidence standard identified in **Hill** is clearly established federal
8  law in the parole context for purposes of 28 U.S.C. §2254 (d). See **Sass v.**
9  **California Bd. of Prison Terms**, 461 F.3d 1127, 1128–1129 (9th Cir. 2006).

10     As explained, ascertaining whether the some evidence standard is met "does
11  not require examination of the entire record, independent assessment of the
12  credibility of witnesses, or weighing of the evidence.  Instead, the relevant
13  question is whether there is any evidence in the record that could support the
14  <u>conclusion reached</u> by the disciplinary board." **Hill**, 472 U.S. at 455 (Emphasis
15  added); **Sass**, 461 F.3d at 1128.  The some evidence standard is minimal, and
16  assures that "the record is not so devoid of evidence that the findings of the
17  disciplinary board were without support or otherwise arbitrary." **Sass**, 461 F.3d
18  at 1129 (quoting **Hill**, 472 U.S. at 457).

19     California courts have further explained that "the commitment offense can
20  negate suitability only if circumstances of the crime reliably established by
21  evidence in the record rationally indicate that the offender <u>will</u> present an
22  unreasonable public safety risk if released from prison.  Yet, the predictive
23  value of the commitment offense may be very questionable after a long period
24  of time." **In re Scott**, 34 Cal.Rptr. 3d 905, 916, 920, fn. 9 (Cal. App. 1 Dist.
25  (2005).  In examining the evidence, "the test is not whether some evidence
26  supports the <u>reasons</u> the [Board] cites for denying parole, but whether some
27  evidence indicates a parolee's release <u>unreasonably endangers public safety</u>.
28  (cites omitted)" **In re lee**, 49 original).

1 | Cal. Rptr. 3d 931, 936-940 (Cal. App. 2 Dist. 2006) (emphasis in original);

2 | **In re Elkins**, 50 Cal. Rptr. 3d 503, 515-518 (Cal. App. 1 Dist. 2006 (same).)

3 |    Recent Ninth Circuit cases reflect that a critical issue in parole denial

4 | cases is the Board's use of evidence from the commitment offense and prior

5 | history.  In **Biggs**, the court explained that the some evidence standard may be

6 | considered in light of the Board's decisions over time. **Biggs**, 334 F.3d at

7 | 916-917.  The court reasoned that "[t]he parole Board's decision is one of

8 | 'equity' and requires a careful balancing and assessment of the factors con-

9 | sidered... A continued reliance in the future on an unchanging factor, the

10 | circumstances of the offense and conduct prior to imprisonment, runs contrary

11 | to the rehabilitative goals espoused by the prison system and could result in

12 | a due process violation." (**Id.**)  Although the **Biggs** court upheld the initial

13 | denial of a parole release date based solely on the nature of the crime and

14 | the prisoner's conduct before incarceration, the court cautioned that "[o]ver

15 | time, however, should Biggs continue to demonstrate exemplary behavior and

16 | evidence of rehabilitation, denying him a parole date simply because of the

17 | nature of his offense would raise serious questions involving his liberty

18 | interest." (**Id.** at 916).

19 |    The **Sass** court criticized the decisions in **Biggs**: "Under AEDPA it is not

20 | our function to speculate about how future parole hearings could proceed."

21 | **Sass**, 461 F.3d at 1129.  **Sass** determined that it is not a due process viola-

22 | tion per se if the Board determines parole suitability based solely on the

23 | unchanging factors of the commitment offense and prior offenses. (**See id.**

24 | [prisoner's commitment offenses in combination with prior offenses amounted

25 | to some evidence to support the Board's denial of parole].)  However, **Sass** does

26 | not dispute the argument in **Biggs** that, overtime, a commitment offense may be

27 | less probative of a prisoner's **current** threat to the public safety.

28 |    In **Irons** the Ninth Circuit Court emphasized the continuing vitality of

1  **Biggs**, but concluded that relief for Irons was precluded by **Sass**. (**See Irons**,

2  470 F.3d at 664.  The Ninth Circuit Court explained that all of the cases in

3  which it previously held that denying parole based solely on the commitment

4  offense comported with due process were ones in which the prisoner had not yet

5  served the minimum years required by the sentence. (**Id.** at 665).  Also, noting

6  that the parole board in **Sass** and **Irons** appeared to give little or no weight

7  to evidence of the prisoner's rehabilitation.  The Ninth Circuit Court stressed

8  its hope that "the Board will come to recognize that in some cases, indefinite

9  detention based solely on an inmate's commitment offense, regardless of the

10  extent of his rehabilitation, will at some point violate due process, given

11  the liberty interest in parole that flows from relevant California Statutes."

12  (**Id.** [citing **Biggs**, 334 F.3d at 917].)  California's parole statutes establish

13  that "the commitment offense can negate [parole] suitability <u>only</u> if circum-

14  stances of the crime reliably established by evidence in the record <u>rationally</u>

15  <u>indicate</u> that the offender will present an unreasonable public safety risk if

16  released from prison." (**In re Tripp** (2007) 150 Cal. App. 4th 306, 319.)

17                                            **E.**

18            THE CIRCUMSTANCES OF PETITIONER'S COMMITMENT OFFENSE
              WAS NOT, AT THE TIME OF THE HEARING, SOME EVIDENCE
19            THAT HIS RELEASE TO PAROLE WOULD UNREASONABLY ENDANGER
                              PUBLIC SAFETY.

20      Before the August 2, 2006 BPH panel was an extensive record of rehabilition

21  accomplished by petitioner during the 16½ years since the commitment offense

22  of Attempted Murder on February 28, 1990.  This extensive record includes over

23  10 years of participation in AA and NA groups; at least 20 certificates for

24  completions of other groups and programs; a completion in welding; a diploma

25  in writing; and, more importantly, 16½ years of sobriety from drugs and alcohol.

26  Petitioner has matured and has received many chronos from staff supervisors

27  that he is an acceptable to exceptional employee.  As mentioned, all reports

28  prepared by prison staff regarding petitioner's suitability are favorable for

his release.

Petitioner has more than demonstrated that he is rehabilitated and worthy of parole.  He has an excellent expectation for success on parole as he has excellent parole plans; job offers- is very much employable upon release; he has extensive support from family and friends; and is sincere in his addiction recovery.

Considering that petitioner's "reasonable [disciplinary] record" consists of 2 Division "F" offenses ("F" being the least serious of all "serious"), and 1 Administrative offense- none of which curtail violence or drug or alcohol use, and the fact that prison psychologists feel that his violence potential is "nil" to "no more than the average citizen", this should not have precluded him from consideration for parole and surely demonstrates that he does not pose an unreasonable threat to public safety.  The panel was correct to conclude that petitioner's record is "reasonable".

Therefore, based on the record and reports before the panel and the state courts, petitioner has demonstrated that he has adequately bridged the gap between his behavior on February 28, 1990 and his current rediness for return to society.  The lower courts should have ordered and evidentiary hearing so their record could reflect the above.  Based on A through E above this court is presented these questions:

**1.**
WAS THE SUPERIOR COURT DECISION AND SUBSEQUENT APPELLATE AND SUPREME COURT SUMMARY DENIALS AN ABUSE OF DISCRETION UNDER CALIFORNIA STATE LAW?

**2.**
WAS THE LOWER JUDICIARY'S REFUSAL TO GRANT HABEAS CORPUS RELIEF "CONTRARY TO" CONTROLLING U.S. SUPREME COURT HOLDINGS, AS APPLICABLE VIA THE 14TH AMENDMENT'S "DUE PROCESS" CLAUSE, WHEN DENYING LIBERTY INTEREST IN PAROLE BY AFFIRMING THE PAROLE BOARD'S DECISION? (28 USC §2254(d)(1).

**3.**

WERE THE LOWER COURT'S REFUSALS TO GRANT HABEAS CORPUS
RELIEF AN "UNREASONABLE APPLICATION" OF CONTROLLING U.S.
SUPREME COURT CASES WHICH SHOULD HAVE CONTROLLED LOWER
DECISIONS AS APPLICABLE VIA THE 14TH AMENDMENT'S "DUE
PROCESS" CLAUSE WHEN DENYING LIBERTY INTEREST IN PAROLE?

**4.**

DID THE LOWER COURT'S REFUSAL TO GRANT HABEAS CORPUS
RELIEF ESTABLISH THAT THE ORDERS BECAME AN "UNREASONABLE
DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE
PRESENTED" WHEN DENYING LIBERTY INTEREST IN PAROLE AS THE
JUDICIALLY VAGUE EVIDENCE WAS CONTRADICTED BY "CLEAR AND
CONVINCING EVIDENCE" TO SUPPORT PETITIONER'S ALLEGATIONS
OF 14TH AMENDMENT DUE PROCESS VIOLATIONS?

The following claims have thus been presented to this and the lower courts:

**CLAIM 1.**
**THE BOARD OF PAROLE HEARINGS' DECISION TO DENY PAROLE**
**IS SUBJECT TO MEANINGFUL JUDICIAL REVIEW.**

Sentencing under PC. §190 et Seq. after conviction of an attempted murder under PC. §664/187 makes petitioner subject to the Board of Parole Hearing's authority to grant parole.  In the conducting of a parole hearing, the BPH is subject to PC. §3041.  California's parole scheme creates a cognizable liberty interest in release on parole (**McQuillion**, 306 F.3d at pg. 901-902).

> "Section 3041 of the California Penal Code creates in every
> inmate a cognizable liberty interest in parole which is protected
> by the procedural safeguards of the due process clause [citations]
> ....the liberty interest is created, not upon the grant of the
> parole date, but upon the incarceration of the inmate."

**Biggs**, 334 F.3d at pg. 915, "Prisoners have a protected liberty interest in parole under the due process protection of the California constitution." (**Rosencrantz**, 128 Cal. Rptr. 2d 137-138).

"The governing statutes provide that the Board is the Administrative agency within the executive branch that generally is authorized to grant parole and fix release dates (PC. §§3040, 5075 et Seq." (**Rosencrantz**, 128 CAL. Rptr. 2d at pg. 137).  "Habeas Corpus is the proper remedy to test the propriety of proceedings before the Board."  Judicial Review may be obtained by filing a

1   Petition for Writ of Habeas Corpus. (**Powell**, 45 Cal. 3d pg. 900).  The proper

2   court in which to start an original petition is the sentencing Superior Court.

3   (**Sena**, 115 Cal. Rptr. 2d at 25).

4        The evidentiary standard on judicial review of the Board's decision is

5   "some evidence," but this must be applied in the context of the statutory

6   framework in which petitioner's liberty interest arises.  "[w]e conclude that

7   the judicial branch is authorized to review the factual basis of a decision of

8   the Board denying parole in order to ensure that the decision comports with

9   the requirements of the due process of law, but that in conducting such a

10  review, the court may inquire only whether some evidence in the record before

11  the Board supports the decision to deny parole based upon the factors specified

12  by statute and regulation." (**Rosencrantz**, 29 Cal. 4th at 658).  The court made

13  clear that the "some evidence" test is embedded in all other due process of

14  law. "[A]s long as the (Board's) decision reflects due consideration of the

15  specified factors as applied to the individual prisoner in accordance with

16  applicable legal standards.  The court's review is limited to ascertaining

17  whether there is some evidence in the record that supports the (Board's) dec-

18  ision." **Id. at 677.**

19       Evidence relied upon must posess "some indicia of reliability." (**Biggs**,

20  334 F.3d at 915; **McQuillion**, 306 F.3d at 904; **Jancsek**, 833 F.2d at 1390). The

21  evidence is subject to both state and federal rules of evidence (See **Hill**, 472

22  U.S. at 455-457).  Petitioner requests now and in every phase of lower procee-

23  dings, an evidentiary hearing regarding the attached exhibits, because "[A]t

24  the evidentiary hearing, such exhibits are subject to admission into evidence

25  in accordance with generally applicable rules of evidence." (**Rosencrantz**, 29

26  Cal. 4th at 675).

27       "[R]elease upon parole is the rule rather than the exception." (**Smith**, 114

28  Cal. App. 4th at 351).  "[A] grant of parole is an integral part of the penol-

28

1  ogical system intended to help those convicted of a crime to integrate into

2  society as constructive individuals as soon as possible and alleviate the cost

3  of maintaining them in custodial facilities." (**People v Vickers**, (1972) 8 Cal.

4  3d 451); **Morrissey v Brewer**, (1972) 408 U.S. at 477).

5                                  **CLAIM 2.**

6       THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S
       FEDERALLY PROTECTED RIGHT TO DUE PROCESS, GUARANTEED
       BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED

7      STATES CONSTITUTION, WHEN IT FOUND PETITIONER UNSUITABLE
       FOR PAROLE FOR THE SEVENTH TIME, RELYING ON IMMUTABLE

8      FACTORS AND REASONS THAT DO NOT PROVIDE "SOME EVIDENCE"
       TO SUPPORT THE "CONCLUSION" THAT PETITIONER "WOULD POSE

9      AN UNREASONABLE RISK OF DANGER TO SOCIETY OR A THREAT TO
                  PUBLIC SAFETY IF RELEASED FROM PRISON."

10

11      "The commitment offense can negate suitability only if circumstances of

12  the crime reliably established by evidence in the record rationally indicate

13  that the offender **will** present an unreasonable public safety risk if released

14  from prison... thus, denial of release solely on the basis of the gravity of

15  the offense warrants especially close scrutiny... [t]he gravity of the commit-

16  ment offense or offenses alone may be sufficient basis for denying a parole

17  application, so long as the Board does not fail to consider all other relevant

18  factors." (**Scott II**, 133 Cal. App. 4th 753; 2005 DJDAR at 12456).

19      The BPH's refusal to consider age and remorse deprives petitioner of due

20  process of law because he "is entitled to 'an individualized consideration of

21  all relevant factors.'" (citation) (**DeLuna**, 126 Cal. App. 4th at 591).

22      Age has long been regarded as a factor in parole decisions. (**Schoengarth**,

23  66 Cal. 2d at 300). Regarding CCR. 15 §2402(d)(7) Age, "the decrease in

24  violence and criminal activity with age is a well established principle of

25  criminology." (Erica Beecher-Monas & Edgar Garcia-Rill, Danger at the edge of

26  Chaos: Predicting violent behavior in post-daubert world, 24 Cardoza L. Rev.

27  1845, 1898 (2003)). "[T]he relevance of youth as a mitigating factor derives

28  from the fact that the signature qualities of youth are transient: as indiv-

1   iduals mature, the impetuousness and recklessness that may dominate in younger

2   years can subside." (**Johnson**, 509 U.S. 368 (1993)).  The evidence in petition-

3   er's case fits and the failure of the BPH to reflect consideration of this

4   factor highlights the BPH's arbitrary and capricious manner in denying parole.

5      Similarly, the record is replete with evidence that petitioner understands

6   the magnitude and significance of his crime against Matt Mabry.  Historically

7   the BPH puts great weight on a prisoner's attitude toward the offense, and

8   this was so even before the BPH was legally required to consider this factor.

9   (**Seabock**, 140 Cal. App. 3d at 33).  **Rosencrantz**, held the importance of culp-

10  ability and remorse. (**Rosencrantz**, 29 Cal. 4th at 680).  Given that Court's

11  adminition that all statutory and regulatory factors be considered, the BPH's

12  failure to apply these factors is a failure in due process.

### CLAIM 3.

PETITIONER'S COMMITMENT OFFENSE WAS NOT A FIRST
DEGREE MURDER; A FELONY MURDER; NOR AN EXECUTION
STYLE MURDER, YET PETITIONER HAS SERVED THE MINIMUM
TERM FOR SUCH OFFENSES.

16  PC. §3041(b) requires that the BPH consider the gravity of petitioner's

17  offense in relation to its threat to public safety, but **Rosencrantz** requires

18  that, in doing so, the BPH must apply appropriate legal principles.  If petit-

19  ioner will pose no threat or an unreasonable risk to public safety (PC. §3041

20  (a)), he is entitled to be paroled.  In fact, petitioner is well beyond the

21  point at which he became entitled to have a parole date set. (**Dannenberg**, 34

22  Cal. 4th at 1078-1079).

23     **In re Rosencrantz**, the court entertained and weighed in regarding elements

24  of first degree murder within a second degree murder offense.  Could the BPH

25  find a prisoner unsuitable if their second degree offense was carried out in

26  a first degree murder manner?  Could a second degree murder be subjected to

27  first degree murder standards?  The court appears to allow for such which

28  would allow some second degree murder cases (those with first degree elements)

1  to be denied parole longer than others.

2        Even if petitioner's attempted murder of Matt Mabry were especially heinous

3  by virtue of causing death, when petitioner is past the minimum time served

4  for first degree murder, it is appropriate by due process to consider the

5  gravity of the offense under first degree murder standards.  It is true the

6  BPH may deny a grant of parole due to the nature of the commitment offense

7  alone (**Dannenberg**, 34 Cal. 4th at 1094; **Rosencrantz**, 29 Cal. 4th at 682), but

8  it is in the nature of the statute to differentiate kinds of murder, the

9  difference between murder and attempted murder, and the BPH must apply <u>all</u>

10  appropriate legal principles to <u>all</u> the statutory and regulatory factors when

11  it does so.

12        The principle of reviewing the circumstances of a second degree murder as

13  if it were, and in the light of, first degree murder, was suggested in **Ramirez**,

14  94 cal. App. 4th, 570-571.  It is legal principle established by the legis-

15  lature that there be "distinct terms to life without the possibility of parole,

16  25 years to life, 15 years to life and life with the possibility of parole in

17  7 years and these are to be applied to different degrees and kinds of murder.

18  (PC §190 et Seq.) (emphasis added, op. cit.)  The principle of review was

19  later explained and approved without dissent in **Rosencrantz**, 29 Cal. 4th at

20  690, J. Moreno concurring.  The practice was approved, applied, and disting-

21  uished from the facts in **Ramirez**, by **Van houten**, 10 Cal. Rptr. 3d at 424-425.

22  Application to petitioner's offense shows there is no element so egregious to

23  make the offense especially heinous as a first degree murder.  And petitioner's

24  offense is not felony murder, as was **Ramirez** and **Van Houten**, and it cannot be

25  said that, for a first degree murder, the attempted murder was more than

26  minimally necessary to convict of attempted willful, deliberate and premed-

27  itated murder as defined in CCR 15 §2403(d).  Petitioner is, therefore, suit-

28  able for parole because, by those standards, his crime is not so grave as all

other first degree murders. Petitioner is entitled to have his liberty interest
in parole decided according to the most appropriate legal principles, including
the evaluation of the gravity of his offense by first degree murder standards.

The offense is the BPH's sole ground for denying parole. However, the
decision reflects no consideration of the statutory mandate that there be some
consideration given between the length of the sentence and the seriousness of
the offense. "There will come a point, which may already have arrived, when
petitioner would have become eligible for parole if he had been convicted of
first degree murder. Once petitioner reaches that point, it is appropriate
to consider whether his offense would still be considered especially egregious
for a first degree murder in order to promote the parole statute [standard]
goal of proportionality between length of sentence and the seriousness of the
offense (citation)." **(Rosencrantz**, 29 Cal. 4th at 690, J. Moreno concurring).
This discussion was regarding degrees of murder.

What about holding a prisoner to a crime and its proportionality that he
didn't commit but attempted to commit? How would the above discussion factor
in the crime of attempted murder? It cannot be said that petitioner's appli-
cation for parole has been decided after applying all appropriate legal prin-
ciples in the context of statute and regulation. The BPH's decision is, there-
fore, arbitrary in the sense that the gravity of petitioner's offense has not
been decided under the due process requirement and, therefore, his current
risk to public safety has been decided in an arbitrary and capricious manner.

**United States v Caceres** (  ) 59 L. Ed 2d 733, fn. 14, in part, 440 U.S. 741,
995 Ct. 1465 has held:

> "Where the rights of individuals are affected it is incumbent
> upon agencies to follow their own procedures. This is so even
> where internal procedures are possibly more rigorous than
> otherwise would be required. **Morton v Ruiz** 415 U.S. 199, 235,
> 39 L. Ed 2d, 270, 94 S.Ct. 1055."

In this particular claim, petitioner has been denied parole by the BPH's

1  use of his commitment offense of attempted murder.  However, petitioner sets

2  forth how this use was arbitrary to the point of illegally keeping him impri-

3  soned in violation of his 14th Amendment due process protections.

(RIGHT TO PROCEDURAL DUE PROCESS)

5      A "liberty interest" to some right/expectation/benefit before the 14th

6  Amendment's due process clause is triggered in situations where there is a

7  denial of parole.  **In re Johnson**, (Cal. App. 1 District 1995) 41 Cal. Rptr. 2d

8  449, 456: "Altough the Board has broad discretion in parole matters, that

9  discretion is subject to the prisoner's right to procedural due process."

10      Solidifying the need of specific procedures in which to deny parole, **In re**

11  **Dannenberg**, (Cal. Sup. Ct. 2005) 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417 has

12  stated:

13          "[Penal Code] section 3041 addresses how the Board is to make
           decisions for indeterminate life inmates.... In response to
14          these requirements, the Board has adopted regulations covering
           the various categories of indeterminate life inmates.... The
15          regulations do set detailed standards and criteria for deter-
           mining whether a murderer is suitable for parole." (emphasis
16          added)

17                              **CLAIM 4.**
             PETITIONER CONTENDS THERE IS NO EVIDENCE IN THE RECORD TO
18           PERMIT HIS "SERIOUS" RULES VIOLATION REPORTS (CDC-115's)
             TO BE "SOME EVIDENCE" WITHIN THE MEANING OF **SUPERINTENDENT**
19           **V HILL** AS AN INDICIA OF RELIABILITY TO PREDICT FUTURE
             DANGEROUSNESS OR TO BE AN UNREASONABLE RISK UNDER CCR 15,
20                              §2402 (a).

21      **Jancsek v Oregon Bd. of Parole**, (9th Cir. 1987) 833 F. 2d 1389, 1390 has

22  signified: "[t]he evidence underlying the [Parole] board's decision must have

23  some indicia of reliability."  Here, petitioner further proffers the analysis

24  of "serious" rules violation reports with past criminality that was minor in

25  nature.  Petitioner cannot say these two distinct aspects are synonymous;

26  however, they should be parallel under the following case's analogy:

27          **In re DeLuna**, (2005) 126 Cal. App. 4th 585, 598 (inmate's
           previous arrest record did not constitute "some evidence"
28          of a threat to public safety because the alleged acts did
           not involve serious injury or attempted serious injury to
           a victim).

1    Here, the BPH's use of basically minor CDC-115's where no injury or vio-

2    lence was involved to deny parole as they would like to see more distance bet-

3    ween them (HT:2006, pg. 79, lns. 2-7) and as a means of oppression violates

4    petitioner's 14th Amendment due process protections.

5                              **CLAIM 5.**

6            THERE IS NO NEXUS BETWEEN THE COMMITMENT OFFENSE, "A
             REASONABLE [DISCIPLINARY] RECORD," AND PETITIONER'S
7                          CURRENT PAROLE RISK.

8    The BPH's 2006 denial represents the fifth time they have used the comm-

9    itment offense to deny parole.  In making its decision the BPH made a conn-

10   ection between the unchanging circumstances of petitioner's offense and his

11   current risk to public safety.  As explained in **Rosencrantz**, 29 Cal. 4th at

12   656, the "some evidence" test means that the connection must have some ration-

13   al basis in fact.  "[I]n the parole context, the requirements of due process

14   are met if some evidence supports the decision," and "the evidence underlying

15   the decision must possess some indicia of reliability." **Biggs**, 334 F.3d at

16   914-915.  Evidence that lacks any probative value cannot constitute "some

17   evidence." **(Cato**, 924 F.2d at 705).  Flipping a coin, baseless speculation,

18   caprice, whim, stereotyping, or the use of the slightest speck of evidence do

19   not satisfy the test.

20   It is the BPH's duty under PC. §3041(b) to predict by subjective analysis

21   petitioner's current danger to public safety.  **Rosencrantz**, 29 Cal. 4th at 655.

22   Given petitioner's sole act of violence and his current state of rehabilitation,

23   which not even the BPH disputes, after nearly 17 years in prison, the BPH's

24   ability to predict petitioner's future dangerousness based solely on the cir-

25   cumstances of the offense is nil.  For this reason the BPH and CDCR order

26   psychological and Board reports.  They are suppose to utilize these as a means

27   of predicting petitioner's future dangerousness.  Instead of doing that, the

28   BPH tries to link non-serious behavior and trivial speculation in order to

1  find unsuitability.  In this way the BPH can avoid recognizing expert analysis

2  regarding this prediction.  If petitioner's psychologist and counselor reports

3  were negative and reported that petitioner posed a high degree of threat,

4  instead of nil, one would suppose the BPH would have talked endlessly about

5  them.  But, as it was, they merely mentioned that these reports were "basic-

6  ally good, basically supports your parole." (HT:2006, pg. 77, lns. 24-26; pg.

7  78, lns. 1-3).

8       There was no mention by the BPH what these reports stated about petitioner's

9  disciplinary record.  "To a point, it is true, the circumstances of the crime

10  and the motivation for it may indicate a prisoner's instability, cruelty,

11  impulsiveness, violent tendencies, and the like.  However, after 16 or so

12  years in the caldron of prison life, not exactly an ideal therapeutic environ-

13  ment to say the least, and after repeated demonstrations that despite the

14  recognized hardships of prison, this petitioner does not possess those attri-

15  butes, the predictive ability of the circumstances of the crime is near zero."

16  (**Irons**, 358 F.Supp. 2d at 947, emphasis added).

17       "The commitment offense can negate suitibility only if circumstances of

18  the crime reliably established by evidence in the record rationally indicate

19  that the offender will present an unreasonable public safety risk if released

20  from prison.  Yet, the predictive value of the commitment offense may be very

21  questionable after a long period of time." (**Scott II**, 133 Cal. App. 4th at 595).

22       "Although the gravity of the commitment offense and other
23       pre-conviction factors alone may be sufficient to justify
         the denial of a parole date at a prisoner's initial hearing,
24       subsequent BPT decisions to deny a parole must be supported
         by some post-conviction evidence that the release of an
25       inmate is against the interest of the public safety."
         (**Masoner**, (2004) WL 1080177 at #1-2 (C.D. Cal. 2004)).

26       The BPH has only one fundamental decision to make: is petitioner a current

27  threat to public safety?  "[A] determination of unsuitability is simple short-

28  hand for a finding that a prisoner currently would pose an unreasonable risk

35

1  of danger if released at this time." (**Smith**, 114 Cal. App. 4th at 370; CCR 15

2  §2402(d)) Citing the way petitioner carried out his crime establishes that

3  petitioner was, at one time, in the past, a threat to public safety.  However,

4  given the petitioner's current will, established remorse, and rehabilitation,

5  the BPH is required to find grounds that exist <u>now</u> that petitioner somehow

6  poses a "continuing danger to the public." (**Dannenberg**, 34 Cal. 4th at 1084).

7      The real, complete, facts surrounding the offense and petitioner's subseq-

8  uent  post-conviction rehabilitation do not <u>NOW</u> constitute "some evidence",

9  possessing "some indicia of reliability" that petitioner poses a danger to the

10  public.  The BPH's decision is a violation of due process because it is arbi-

11  trary and capricious. (**Hill**, 472 U.S. at 455; **Biggs**, 334 F.3d at 917; **Irons**,

12  359 F.Supp.2d at 947).

13                          CONCLUSION.

14      No one disputes the cruelty, callousness, or the motive in the attempted

15  murder and injury to Matt Mabry, nor does the BPH dispute that petitioner's

16  rehabilitation is real and evident.  The BPH cited no other evidence or cir-

17  cumstance to deny parole.  "Continuing reliance on unchanging circumstances

18  transforms an offense for which California Law provides eligibility for parole

19  into a de facto life imprisonment without parole... given that no one seriously

20  contends lack of [callousness, cruelty, or motive] at the present time, the

21  potential for parole in this case is remote to the point of non-existant.

22  Petitioner's liberty interest should not be determined by such an arbitrary,

23  remote possibility." (**Irons**, 358 F.Supp.2d at 947).

24      If each panel of the BPH is allowed to determine that all gains made by

25  petitioner are recent, or just now happening, then, year by year, petitioner

26  will be held unsuitable regardless of his <u>current</u> state of rehabilitation.

27  Such a state of affairs is arbitrary in the sense that petitioner's suitability

28  would depend upon the personality of the decision maker, rather than statute

1 | and regulation, as required.

2 | Petitioner admits guilt for this crime and has since his arrest. Petitioner

3 | has spent his time in prison well and has participated in 40 plus programs to

4 | get a perspective on how to reenter society as a productive citizen.

5 | The state courts should have ordered an evidentiary hearing if they needed

6 | clarification on the exhibits attached hereto. Lack of an evidentiary hearing

7 | further deprives petitioner a chance to shed light on his many acheivements

8 | since the day he commited this terrible crime. Petitioner is rehabilitated.

9 | **PRAYER FOR RELIEF.**

10 | Wherefore, based on the 5 claims and 4 questions of law and the accompany-

11 | ing memorandum of points and authorities detailed and attached to this petition

12 | for writ of habeas corpus, petitioner prays this court:

13 | !.) Issue an order to show cause;

14 | 2.) Order an evidentiary hearing;

15 | 3.) appoint counsel to represent petitioner;

16 | 4.) or, in the alternative, rule on the merits of the case, and or,

17 | let the court conduct a fair and impartial hearing;

18 | 5.) any other relief, either declaratory, injunctive, or both, as
the court may deem necessary, reasonable, just, and fair.

20 | Dated: _OCT. 25_____, 2007

21 | Respectfully Submitted,

22 | _Jody Patterson_

23 | Jody D. Patterson,
petitioner, in pro se.

1         List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    SEE ATTACHED MEMORANDUM OF POINTS AND AUTHORITIES.

5    _____

6    _____

7    Do you have an attorney for this petition?                    Yes_____    No_XX_

8    If you do, give the name and address of your attorney:

9    APPOINTMENT OF COUNSEL REEQUESTED.

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on _OCT. 25, 2007_                    _Jody Patterson_____

14              Date                    Jody D. Patterson, In Pro Per
                                             Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

38