# EXHIBIT "A"

Insert name of court, branch court, if any, and address

SUPERIOR COURT OF CALIFORNIA, COUNTY OF <u>ORANGE</u>

**FOR COURT USE ONLY**

# FILED

MAR 12 1991

GARY L. GRANVILLE, County Clerk

By _____/s/_____ DEPUTY

---

PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT: PATTERSON, Jody Dion    [XX] Present    [ ] Not Present

[XX] JUDGMENT OF COMMITMENT TO:    [XX] STATE PRISON    [ ] COUNTY JAIL
[ ] ORDER GRANTING PROBATION    [ ] AND MINUTE ORDER

CASE NUMBER:

· C-79650 ·

| Date of hearing: 03-08-91 | Dept. No.: 48 | Judge: COMM. R. Aronson | Clerk: F. Yamasaki | Reporter: Dale Murfey |
| Counsel for People: Claudia Silbar, D.D.A. | | Counsel for defendant: Brooks Talley, D.P.D. | | Probation Officer: Bonnie Katz, D.P.O. |

1. Defendant was convicted of the commission of the following crime on (Date): __1-28-91__

| Count | Code Section | Crime | Degree | By Jury, Court or Plea (Specify) |
|-------|-------------|-------|--------|-------------------------------|
| 1 | 664/187(a) PC | Attempted Murder | First | Jury |

2. Defendant [ ] was arraigned [XX] waived arraignment for judgment.

3. The court, having read and considered the probation report and no legal cause having been shown why judgment should not be pronounced

   a. [XX] Sentences defendant to State Prison for the term prescribed by law. **(Life with possibility of parole)**

   b. [ ] Specifies, pursuant to Pen. C. 1202b, the minimum term of imprisonment shall be six months as to count: _____

   c. [ ] Sentences defendant to County Jail for the period of (Specify number of days): _____

   d. [ ] Suspends imposition of sentence and defendant is placed on probation for the period of: _____
      [ ] upon conditions set forth in attachment 3d.

4. [ ] Defendant, convicted of more than one count, shall
   a. [ ] serve the sentence as to each count as follows:

   | Count | Consecutive With | Concurrent with |
   |-------|-----------------|-----------------|
   | | | |

   b. [ ] serve the counts made consecutive in the following order:

5. Defendant shall serve this sentence with respect to any prior uncompleted sentence . a. [XX] concurrently. b. [ ] consecutively.
   c. [ ] as set forth below or in attachment 5c.

6. Execution of sentence is
   a. [ ] stayed on the following count: _____ pending appeal, with the stay to become permanent when the sentence is completed as to count: _____
   b. [ ] suspended and defendant is placed on probation for the period of: _____
      [ ] upon conditions set forth in attachment 6b.

7. [ ] No allegation to enhance punishment was made in count: _____

8. [XX] It was alleged
   a. [ ] Defendant was armed with a deadly weapon at the time of the commission or attempted commission of the crime charged in count: _____ [ ] and allegation stricken as to count: _____

**(Continued on reverse side)**

This form satisfies the requirements of Penal Code 1213.5 (Abstract of Judgment and Commitment). Singular includes the plural. This form is to be used in judgments other than death. A copy of probation report shall accompany this form pursuant to Penal Code 1203c and a copy of any supplementary probation report shall be transmitted to the Department of Corrections. Attachments may be used but must be incorporated by reference.

Form Approved by the
Judicial Council of California
Effective July 1, 1976

**JUDGMENT-COMMITMENT**

Pen.C. 644, 969c, 969d, 1203, 1213.5,
3024, 12022, 12022.5.

FO182-432 (R 7/78)

39

b. ☒☒ Defendant used a firearm ic ____ per ____ ☐ and allegation str ____ _____count

c. ☐ ____ arrest with a concealed deadly weapon with ____ eaning of Pen. C. 3024
   ☐ and allegation stricken.

d. ☒☒ Other (Specify and indicate if stricken): Inflicted great bodily injury per 12022.7 PC

9. ☒☒ The Court finds the defendant

a. ☐ *was armed* at the time of commission or attempted commission of the crime with a deadly weapon within the meaning of
   (1) ☐ Pen C. 3024 as to count: _____   ☐ but strikes the finding as to count: _____
   (2) ☐ Pen C. 12022 as to count: _____   ☐ but strikes the finding as to count: _____
   (3) ☐ Pen C. 1203 (Specify weapon): _____
       as to count: _____   ☐ but strikes the finding as to count: _____

b. ☐ *was not armed* at the time of commission or attempted commission of the crime within the meaning of
   (1) ☐ Pen C. 3024 as to count: _____
   (2) ☐ Pen C. 12022 as to count: _____
   (3) ☐ Pen C. 1203 as to count: _____

c. ☒☒ *did use a firearm* as to count: _____1_____   ☐ but strikes the finding as to count: _____
   (1) ☐ The use was one use for the following counts: . . _____ The additional penalty shall
       run consecutively to the sentence on the last count to be served. _____

d. ☐ *did not use a firearm* as to count: _____

e. ☐ *was armed* at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024 ☐ but strikes
   the finding.

f. ☐ *was not armed* at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024.

g. ☒☒ Other (Specify and indicate if stricken): did inflict great bodily injury in count 1.
   ☒☒ The Court orders punishment on enhancements under section 12022.5(b)
   and 12022.7 stricken.

10. ☐ Prior convictions which affect defendant's sentence were alleged and disposed of ☐ as follows   ☐ as set forth in
    attachment 10.

| Conviction date | Jurisdiction | Crime and code Section | Applies to Count | Disposition |
|---|---|---|---|---|
| | | | | |

11. The court finds defendant   a. ☐ is  ☒☒ is not an habitual criminal under Pen C. 644a.
                                b. ☐ is  ☒☒ is not an habitual criminal under Pen C. 644b.

12. The court pronounced sentence on (Date): ___3-8-91___ . and defendant was held in custody, through and including
    the date of pronouncement of sentence for (Total no. of days): ___373___ as follows

| Count | Time other than Dept. of Corrections | Dept. of Corrections Time |
|---|---|---|
| 1 | 373 | |
| | 187 good and work time | |
| | 560 total | |

13. Defendant is remanded to the custody of the Sheriff

a. ☐ For the period of (Specify no. of days): _____ ☐ upon conditions and recommendations set forth in attachment 13a.

b. ☒☒ To be delivered  ☒☒ at the earliest convenient time  ☐ after 48 hours, excluding Saturdays, Sundays and holidays
   [Pen C. 1203c] into the custody of the Director of Corrections at
   (1) ☐ California Institution for Women—Frontera     (3) ☒☒ California Institution for Men—Chino
   (2) ☐ California Men's Facility—Vacaville           (4) ☐ Other:

14. ☐ The court requests a copy of the diagnostic study and recommendations as provided in Pen C. 1168.

15. The court advised defendant of all appeal rights as required in CRC Rule 250 and defendant acknowledged understanding them.

16. ☐ Other (See attachment 16)

Dated: 3-11-91 COMM. RICHARD M. ARONSON          *Richard M Aron*
                (Type or print name)                COMMISSIONER (Signature of Judge of the Superior Court)

TOTAL NO. of boxes checked: ___17___

**CLERK'S CERTIFICATE**

I hereby certify that the foregoing is a correct copy of the original on file in my office.

Clerk of the superior Court

[Seal]

By *Fuji Yamasaki*          Deputy

JTY

40

# MINUTE ORDER

C- 79650    PEOPLE VS  Patterson, Jody Dion                    PAGE 2

(X) NO LEGAL CAUSE WHY JUDGMT SHOULD NOT BE PRONOUNCED AND DEFT HAVING PLED
( )GUILTY( )NOLO CONTENDERE TO(X)BEEN FOUND GUILTY(X)OF A FELONY, TO WIT:
664/187(a)PC IN COUNT NO _1_, DEFT SENTCD. TO ST. PRISON FOR( )LOW( )MID
( )UPPER TERM OF ____ YEARS. PROBATION IS DENIED. Life with possibility of Paro
( ) DEFT HAS ALSO PLED( )GUILTY( )NOLO CONTENDERE TO( )BEEN FOUND GUILTY OF
THE ADDL CHARGE OF _____( )FELONY( )MISD IN CT _____AND
( )FELONY( )MISD IN CT _____ AND _____ ( )FELONY( )MISD IN CT_____
AND THE COURT WILL:
( ) STRIKE PUNISHMT ON CT_____
( ) SENT DEFT TO ST.PRISON ON CT_____ TO _____ ADDL. YRS.
( )FOR EACH CT. OR ( )TOTAL YRS.
( ) STAY EXEC. OF SENT ON CT _____ PEND. APPEAL/COMPL. OF
CT_____ THEN PERM STAYED( )PURS TO 654 P.C. ON CT_____
(X) COURT FINDS(X)NO ENHANCMTS WERE CHGD. AND FOUND IN CT_____
(X) PUNISHMT TO BE STRICKEN ON( )ALL CTS(X)CT# _1_
(X) ENHANCMTS FOUND UNDER P.C.
12022a (ARMED)_____ IN CT _____
12022b, 12022.3a, 12022.3b, (12022.5b)(USE) IN CT _1_
12022.1 _____ IN CT _____
12022.6, 12022.6b (PROPERTY VALUE) IN CT _____
(12022.7) 12022.8 (GBI) IN CT _____
(X) COURT FINDS(X)NO ___0___ PRIOR(S) CHGD AND FOUND TRUE OR ADMITTED
( ) _____ PRIOR FND.PURS. _____ P.C.( )PRIOR FND PURS _____ P.C.
( ) THIS SENT TO BE( )CONCURR.WITH( )CONSEC. TO ANY OTHER SENT. NOW BEING SVD.
( ) SENT. IMPOSED FOR CT _____ TO BE SERVED CONCURR. WITH SENT. FOR
CT: _____
( ) SENT. IMPOSED FOR CT_____ TO BE SERVED CONSEC. TO SENT. FOR CT_____
( ) SENT. IMPOSED SHALL BE ( )CONCURR WITH ( )CONSEC TO CASE NO_____
IMPOSED BY _____ COUNTY
(X) TOTAL TIME TO BE SERVED:
(X) FOR BASE TERM IN CT _1_ LIFE WITH PAROLE YRS
( ) FOR ENHANCMENTS ON CT_____ YRS
( ) FOR PRIOR (S)_____ YRS
( ) CONSEC. SENT ON CT_____ YRS
COURT STAYS_____ YRS _____
(X) TOTAL TIME IN ST PRISON LIFE WITH PAROLE YRS
(X) DEFT CREDITED WITH 373 ACTUAL DAYS IN CUSTODY, PLUS 187 DAYS
GOOD/WORK TIME( )OTHER _____ FOR TOTAL OF 560 DAYS CREDIT
PURS. STIP. OF DEFT AND CSL ( )
( ) DEPT. OF CORR TO COLLECT $_____
(X) THE REASON COURT PRONOUNCED JUDGMENT IN THIS MANNER IS AS FOLLOWS: Court
cannot find pattern of violent conduct and victim was
not particularly vulnerable.
(X) CRT ADVISED DEFT OF BEING PLACED ON PAROLE AND THAT FOR A VIOL. _1_ ADDL.
YRS. IN ST.PRISON MAY BE IMPOSED.
(X) COURT ADVISED DEFT. OF RIGHT TO APPEAL( )BAIL ON APPEAL SET AT $_____
(X) ALL REMAINING( )PRIORS( )ADDL. CTS. ( )ALLEGS( )ARE STRICKEN
(X) SHERIFF ORDERED TO DELIVER DEFT. TO DEPT OF CORR AT CHINO/ FRONTERA forthwith
(X) DEFT REMANDED TO CUSTODY ( ) HNG. DATE OF_____
( ) DEFT TO BE HOUSED AT C.Y.A. PURS. 1731.5 W & I _____ VACATED( )BAIL EXON.
( ) THIS MINUTE ORDER TO CONSTITUTE THE (AMENDED) PROBATION ORDER

310

DPT47-3(Rev 6/90)                    ENTERED: 3-8-91

# EXHIBIT "B"

42

82 pages total

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

**INMATE**

In the matter of the Life )
Term Parole Consideration )
Hearing of: )        CDC Number E-88649
                           )
JODY PATTERSON             )
                           )
_____)

CALIFORNIA TRAINING FACILITY

SOLEDAD, CALIFORNIA

August 2, 2006

10:12 A.M.

PANEL PRESENT:

Sandra Bryson, Presiding Commissioner
Carol Bentley, Deputy Commissioner

OTHERS PRESENT:

Jody Patterson, Inmate
Anthony Hall, Attorney for Inmate
Paul Chrisopoulos, Deputy District Attorney
Sarah Balli, Victim's Services
Matt Mabry, Victim
Two Correctional Officers Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____                See Review of Hearing
_____                Transcript Memorandum

**Odelia Doria**                **House of Scribes**

i

43

ii

# INDEX

| | PAGE |
|---|---|
| Proceedings | 1 |
| Case Factors | 6 |
| Pre-Commitment Factors | 7 |
| Post-Commitment Factors | 22 |
| Parole Plans | 35 |
| Closing Statements | 57 |
| Recess | 74 |
| Decision | 75 |
| Adjournment | 79 |
| Transcriber Certification | 80 |

--oOo--

ii

44

1

1          P R O C E E D I N G S

2          PRESIDING COMMISSIONER BRYSON:   Thank

3    you, this is the sixth Subsequent Parole

4    Consideration Hearing for Jody Patterson, CDC

5    Number E-88649.   Today's date is August 2nd,

6    2006 and the time is 10:12.   We're located at

7    California Training Facility, Soledad.   The

8    inmate was received March 14th, 1992 from the

9    County of Orange.   The life term began March

10   14th, 1991.   The minimum eligible parole date is

11   August 26th, 1996, Case Number C (Charles)

12   79650, Count One, the controlling offense, Penal

13   Code 664/187 Attempted Murder-First for which

14   the inmate received a term of life.   This

15   hearing is being recorded for the purpose of

16   voice identification, each of us will state our

17   first and last names, spelling the last name.

18   When it is your sir, after you spell your last

19   name, please state your CDC Number.   I will

20   start and then go to my left.   Sandra Bryson, B-

21   R-Y-S-O-N, Commissioner, Board of Parole

22   Hearings.

23          DEPUTY COMMISSIONER BENTLEY:   Carol

24   Bentley, B-E-N-T-L-E-Y, Deputy Commissioner.

25          VICTIM MABRY:   Matt Mabry, M-A-B-R-Y,

26   Victim.

27          DEPUTY DISTRICT ATTORNEY CHRISOPOULOS:

45

1    Paul Chrisopoulos, C-H-R-I-S-O-P-O-U-L-O-S,

2    Deputy District Attorney for the County of

3    Orange.

4        **ATTORNEY HALL:**  Anthony Hall, H-A-L-L,

5    Attorney for Mr. Patterson.

6        **DEPUTY COMMISSIONER BENTLEY:**  Mr.

7    Patterson, one moment, go ahead.

8        **VICTIM SERVICES-BALLI:**  Sarah Balli, B(as

9    in Boy)-A-L-L-I, Victim's Services, PTS.

10       **INMATE PATTERSON:**  Jody Patterson,

11   P-A-T-T-E-R-S-O-N, E-88649 CDC Number.

12       **PRESIDING COMMISSIONER BRYSON:**  And I

13   note for the record we have two Correctional

14   Peace Officers in the room today, who are here

15   for security purposes.  Commissioner, is there

16   any confidential material in the file, and if so

17   will it be used today?

18       **DEPUTY COMMISSIONER BENTLEY:**  There is

19   but we won't use it.

20       **PRESIDING COMMISSIONER BRYSON:**  Thank

21   you.  All right, I've passed the hearing

22   checklist, Marked Exhibit One, (indiscernible)

23   and also to the District Attorney, to make sure

24   we're all operating with the same set of

25   documents.  And Counsel, do you have the

26   documents?

27       **ATTORNEY HALL:**  Yes, we do.

2    46

3

1          PRESIDING COMMISSIONER BRYSON:  Does the

2     District Attorney have all --

3          DEPUTY DISTRICT ATTORNEY CHRISOPOULOS:

4     Yes, I do.

5          PRESIDING COMMISSIONER BRYSON:  -- the

6     documents?  Thank you.  I would like to note

7     that the Psychiatric Report for August 2nd,

8     2006, was just received today.  All right, are

9     there any additional documents to be submitted,

10    Counsel?

11         ATTORNEY HALL:  We have some recent

12    chronos and a certificate.  Thank you.

13         INMATE PATTERSON:  Those are my only

14    copies of --

15         PRESIDING COMMISSIONER BRYSON:  You'll

16    get them back.

17         DEPUTY COMMISSIONER BENTLEY:  You'll get

18    them back.

19         INMATE PATTERSON:  Okay, thank you.

20         PRESIDING COMMISSIONER BRYSON:  All

21    right, Sir, today, you and your Attorney, find

22    the document marked Exhibit Two, regarding ADA

23    rights, ah, Accommodation Hearing Procedures and

24    Inmates Rights.  And first I'd like to reference

25    the documents, BPT 1073, which you signed April

26    12th, 2006, ah, saying that in fact you did not

27    have any major disabilities, ah, we understand

3                                              47

4

```
 1   that ah, you actually have a very high ah,

 2   reading level and a GPO of 12.9, which is very

 3   high.  Ah, you asserted that you needed help to

 4   see with glasses.  Do you have those with you?

 5   All right, and do they work for you?

 6            INMATE PATTERSON:  Yes.

 7            PRESIDING COMMISSIONER BRYSON:  Okay.

 8   And you -- you can see fine otherwise?

 9            INMATE PATTERSON:  Yes.

10            PRESIDING COMMISSIONER BRYSON:  Okay.

11   And I'll just ask you -- perform a hear -- ah,

12   how's your hearing, is it okay?

13            INMATE PATTERSON:  Yeah.

14            PRESIDING COMMISSIONER BRYSON:  And you

15   had no trouble walking to the hearing room?

16            INMATE PATTERSON:  No I did not.

17            PRESIDING COMMISSIONER BRYSON:  All

18   right. Ah, Counsel, do you have any concerns

19   regarding this inmate's ADA rights, or his

20   ability to participate in this hearing?

21            ATTORNEY HALL:  No we don't.

22            PRESIDING COMMISSIONER BRYSON:  All

23   right, thank you.  One more question I should

24   ask, Sir, because ah, you have ah, prior been on

25   psychotropic drugs, I believe?

26            INMATE PATTERSON:  Yes.

27            PRESIDING COMMISSIONER BRYSON:  Are you
```

4                                    48

1    on any now?

2            INMATE PATTERSON:  No I'm not.

3            PRESIDING COMMISSIONER BRYSON:  All

4    right.  Are you on any other drugs which would

5    interfere, possibly, with your ability to

6    participate in this hearing?

7            INMATE PATTERSON:  No, the only thing --

8    Prozac, I mean -- Prilosec.

9            PRESIDING COMMISSIONER BRYSON:  Oh, I --

10           INMATE PATTERSON:  Not Prozac.

11           PRESIDING COMMISSIONER BRYSON:  All

12   right.  Prilosec should be no problem, all

13   right.  Counsel, are there any preliminary

14   objections?

15           ATTORNEY HALL:  There is none.

16           PRESIDING COMMISSIONER BRYSON:  All

17   right, thank you.  Will the inmate be speaking

18   with the Panel today?

19           ATTORNEY HALL:  Ah, he will be speaking,

20   however, ah, he admits and takes responsibility

21   for the crime, and will not discuss it today.

22           PRESIDING COMMISSIONER BRYSON:  All

23   right.  Well, if you're going to speak with us

24   at all, then I need -- still to swear you in,

25   will you raise your right hand.  You solemnly --

26           INMATE PATTERSON:  (indiscernible)

27           PRESIDING COMMISSIONER BRYSON:  -- You

1    solemnly or affirm that the testimony you give

2    at this hearing, will be the truth, the whole

3    truth, and nothing but the truth?

4         **INMATE PATTERSON:**  Yes, I do.

5         **PRESIDING COMMISSIONER BRYSON:**  All

6    right, thank you.  I will read the summary of

7    the crime, and of course, in the Probation

8    Officer's Report, pages three to eight:

9              The crime occurred on February 28th,

10             1990, as Matt Mabry, Patterson's prior

11             job foreman, drove his pickup truck

12             from the job site.  As Mabry was

13             coming to a stop, he heard a shot and

14             the right passenger side window of his

15             pickup truck was shattered.  He ducked

16             down in the truck and when he peeped

17             out, the second bullet struck the

18             door, which fragmented the bullet,

19             tore open his right arm, injured his

20             neck and chest area.  Bleeding, Mabry

21             crawled out the driver's side door and

22             looked back to the area, where he

23             heard the shots.  He saw Patterson

24             holding what appeared to be a 30-30

25             rifle, which was pointed at him.

26             Mabry ducked behind his truck,

27             scurried across the street, and

7

1       started to run from the area, but fell

2       on the raised center median.   Mabry

3       was transported to a hospital where he

4       underwent surgery to remove debris and

5       fragments from his arm and chest.

6       Police took Patterson into custody at

7       his home that same day.   Approximately

8       two weeks prior to the crime, Mabry

9       and Patterson had gotten into an

10      argument regarding Patterson's poor

11      workmanship.   Mabry had Patterson

12      transferred to a different job site

13      due to their inability to get along.

14      Patterson remained for a few days at

15      the new job site before being laid-off

16      due to lack of work.   Mabry advised

17      that on the day preceding the offense,

18      Patterson drove up behind him on the

19      freeway, after he had left the job

20      site, in his truck, but he lost

21      Patterson when he exited and made

22      evasive maneuvers.   The day of the

23      offense, co-workers informed Mabry

24      that Patterson had been on the job

25      site the previous couple of days,

26      sitting in his vehicle and drinking.

27  As pre-conviction factors, I will

51

8

1   incorporate by reference, this inmate's pre-

2   conviction factors as set forth in the

3   California Identification and Investigation

4   Bureau, commonly known as the CINI Report.

5   I'm noting that this inmate has a juvenile

6   record of reckless driving arrest and

7   unauthorized sale of vehicle, out of New

8   York state. And as to ah, adult arrest and

9   convictions, this inmate has vehicle code

10  violations only, with suspended license

11  effective, June 5th, of 2000 -- or excuse me,

12  of 1990. As to personal factors, you were

13  born in New York, Sir?

14          INMATE PATTERSON:  Yes.

15          PRESIDING COMMISSIONER BRYSON:  Ah,

16  and your parents separated. Mother

17  remarried and divorced your step-father when

18  you were three years old. A second marriage

19  produced two brothers and a sister. Ah,

20  then apparently you've re-established

21  communications with your step-father.

22          INMATE PATTERSON:  Ye -- no, my ah --

23          PRESIDING COMMISSIONER BRYSON:  When

24  you were 17?

25          INMATE PATTERSON:  No, my real father.

26          PRESIDING COMMISSIONER BRYSON:  Oh --

27  your biological father.

1           INMATE PATTERSON:  Sure.

2           PRESIDING COMMISSIONER BRYSON:  Okay.

3    All right, are you in communication with him

4    today?

5           INMATE PATTERSON:  Yes, I am.

6           PRESIDING COMMISSIONER BRYSON:  All

7    right.  Hum, where does he live?

8           INMATE PATTERSON:  He lives down in

9    Wildomar, by Lake Elsinore in California.

10          PRESIDING COMMISSIONER BRYSON:  Oh, I

11   see, okay.  Ah, and then your mother, ah,

12   raised you, hum -- now it says you moved out

13   off -- out on your own at 16, hum, and there

14   is some incident you had -- a molestation

15   you had when you were five years old and

16   counseling following the incident.  But then

17   you graduated from high school in Angelica,

18   New York, hum -- it's a very short

19   biography, so basically --

20          INMATE PATTERSON:  Yeah.

21          PRESIDING COMMISSIONER BRYSON:  -- it

22   shows all over the map, it's pretty hard to

23   track.  How would you characterize your

24   upbringing?  At least prior to the time you

25   left home?

26          INMATE PATTERSON:  My upbringing, it

27   was okay, my mom drank a lot so --

9                                    53

1          PRESIDING COMMISSIONER BRYSON:  I see.

2          INMATE PATTERSON:  So, you know, I --

3     but she did the best she could raising us on

4     welfare -- she had -- I -- me and my two

5     younger brothers and my younger sister to

6     take care of, so, she did a good job, but --

7     I -- I went all the way through school and

8     graduated, I moved out -- this is a small,

9     farm community.

10         PRESIDING COMMISSIONER BRYSON:  I see.

11         INMATE PATTERSON:  So, I had a --

12     there's apartment, you know, mother - son -

13     argument, I moved out for two months into

14     that -- to that apartment, and then moved

15     back home.

16         PRESIDING COMMISSIONER BRYSON:  Oh, I

17     see.

18         INMATE PATTERSON:  Yeah, I mean it

19     was --

20         PRESIDING COMMISSIONER BRYSON:  All

21     right that --

22         INMATE PATTERSON:  -- believe that it

23     seems like I moved away from home at 16 --

24         PRESIDING COMMISSIONER BRYSON:  -- all

25     right, that's exac --

26         INMATE PATTERSON:  -- and never went

27     back, yeah, no.

54

1      PRESIDING COMMISSIONER BRYSON:  Did

2  you do an Olsen review, a C file, review.

3      INMATE PATTERSON:  Yes.

4      PRESIDING COMMISSIONER BRYSON:  Ah,

5  that's the time to try and make corrections

6  in your record.

7      INMATE PATTERSON:  You try  -- if you

8  read this -- the -- the reports versus the

9  actual, what my parole plans are, it's -- I

10  understand this counselors have a million

11  people to see, and so, when they -- they

12  talk to you, they gather as much information

13  as they can, but when it comes back to them

14  doing the report, they're in a room, they

15  got all this paper and they do reports and

16  it looks like, sometimes they just go off

17  the last report, which I can understand for

18  the most part, they glean information from

19  there, and so -- but they're close and --

20      PRESIDING COMMISSIONER BRYSON:  Well,

21  these errors perpetuating and the beam of

22  our existence and we can't do anything to --

23      INMATE PATTERSON:  Yeah, I understand.

24      PRESIDING COMMISSIONER BRYSON:  To

25  correct them from our perspective.

26      INMATE PATTERSON:  And I've tried to

27  correct them myself.

1       PRESIDING COMMISSIONER BRYSON:  Okay.

2       INMATE PATTERSON:  I've even written

3  it out in pieces of paper and given to them,

4  apparently to no avail, so.

5       PRESIDING COMMISSIONER BRYSON:  Okay.

6  Hum, keep trying --

7       INMATE PATTERSON:  Yeah.

8

9       PRESIDING COMMISSIONER BRYSON:  -- is

10  all I can recommend in that regard.  And the

11  Olsen review time would be the time to try

12  to do that.  Ah, all right, you ah,

13  graduated from high school in Angelica, New

14  York, then you attended a -- is that --

15  Boches?

16       INMATE PATTERSON:  BOCES, that's an

17  acronym for --

18       PRESIDING COMMISSIONER BRYSON:  Okay,

19  vocational trade school?

20       INMATE PATTERSON:  Yeah.

21       PRESIDING COMMISSIONER BRYSON:  And

22  received a certificate in diesel mechanics.

23       INMATE PATTERSON:  Yes.

24       PRESIDING COMMISSIONER BRYSON:  All

25  right, ah, you relocated to southern

26  California -- did that have to do with work?

27  Was that work related, your relocation or

1    what was that about?

2        INMATE PATTERSON:  No, because my Dad

3    and my two older brothers and older sister

4    were out here.

5        PRESIDING COMMISSIONER BRYSON:  Those

6    are my -- my last name's Patterson and my

7    younger siblings are Coniato and so the

8    Patterson's all lived out here in

9    California.  So, when I turned 18 and

10   graduated high school, I moved out here with

11   my Dad.

12       PRESIDING COMMISSIONER BRYSON:  And

13   then, did you go to work right away?

14       INMATE PATTERSON:  Yeah.

15       PRESIDING COMMISSIONER BRYSON:  Doing

16   what?

17       INMATE PATTERSON:  I worked at a

18   factory called Load Hold Server Company

19   where I met and subsequently married my wife

20   Linda.

21       PRESIDING COMMISSIONER BRYSON:  I see,

22   okay.  Ah, and, let's see, you have a

23   daughter and son, is that right?

24       INMATE PATTERSON:  Yes.

25       PRESIDING COMMISSIONER BRYSON:  Okay.

26       INMATE PATTERSON:  April and Adam.

27       PRESIDING COMMISSIONER BRYSON:  Aha.

1   How are they?  Are you able to talk stay in

2   contact with them?

3           INMATE PATTERSON:  They're good -- my

4   son and I are having father - son disputes,

5   but --

6           PRESIDING COMMISSIONER BRYSON:  Oh,

7   okay.

8           INMATE PATTERSON:  -- they're good.

9           PRESIDING COMMISSIONER BRYSON:  What's

10  he doing now?

11          INMATE PATTERSON:  He's ah, actually

12  trying to get his contractor's license.  So

13  he works with my Dad on and off and they do

14  jobs and he works in the construction field,

15  so, he's trying to get his -- worked that

16  out in construction, he -- I was hoping he

17  would -- he was talking about being -- going

18  to the Air Force Academy.  And I guess that

19  changed.  I was really hoping he would but--

20          PRESIDING COMMISSIONER BRYSON:  Must -

21  - must be a bright kid then.

22          INMATE PATTERSON:  Yes, he -- he's

23  pretty smart.  He has problem math, kinda

24  like me, I had problems with math in school,

25  but he's --

26          PRESIDING COMMISSIONER BRYSON:  Hope

27  about your daughter, then?

1       INMATE PATTERSON:  My daughter's

2  great, she's ah, she's in college, she

3  should be graduating this year.  If she

4  doesn't change her major again, and ah, and

5  so, she's doing good.

6       PRESIDING COMMISSIONER BRYSON:  All

7  right, ah, now you were divorced in '85,

8  then you remarried and divorced again in

9  '94.

10       INMATE PATTERSON:  Yes.

11       PRESIDING COMMISSIONER BRYSON:  Okay.

12  What's your relationship with your former

13  wife at this  time? Any of the sort?

14       INMATE PATTERSON:  Friendly.

15       PRESIDING COMMISSIONER BRYSON:  Is it?

16       INMATE PATTERSON:  Yeah, and I -- I've

17  been trying to maintain that friendship with

18  her because, one we have the two children

19  and two, I just think she's a great person.

20  So, you know, you need great people in your

21  life as friends, she would be an asset to me

22  as a friend, and I've let her know that and

23  I hope that continues.

24       PRESIDING COMMISSIONER BRYSON:  Good

25  for you.  Okay, now you had bouts with

26  depression, drugs, ah, let's try to address

27  that a little bit because that's -- that's a

39

1  huge concern obviously, to a Panel, in terms

2  of parole.

3      INMATE PATTERSON: Yes.

4      PRESIDING COMMISSIONER BRYSON: And I

5  would guess that, and you will have to speak

6  to that, but ah, I would guess that that

7  played into your -- in your commitment

8  offense. Ah, tell us about that. How did

9  you get started on drugs and what was --

10 what types of drugs in that timeframe were

11 you doing?

12     INMATE PATTERSON: Well, I started

13 smoking marijuana and drinking beer back

14 when I was younger, like 12 - 13 years old,

15 in a small farm community, you know, as --

16 but it -- it wasn't very often and it was

17 with people called back then 'homegrown' --

18 what we get in upstate New York is like

19 rural, low-grade stuff. So it wasn't that

20 big of a deal, but to me as a 12 - 13 year

21 old kid, occasionally, and that's how it

22 started. And I always heard those stories,

23 that if gradually graduate to stronger

24 drugs, but you never listen. I came to

25 California where drugs, down in Orange

26 County, were prevalent. And everybody that

27 I knew was doing all kinds drugs, every time

1   a new designer drug would come out, people

2   were doing them and I got them. Caught

3   right up in that lifestyle. And pretty soon

4   I found methamphetamines, that was my

5   biggest mistake in life, I think. Well,

6   second biggest mistake in life. But ah, so,

7   methamphetamines just took control, I had,

8   it was unbelievable. It gave you energy to

9   do -- live both ends of the world, ah, it

10  was -- it was -- and I'd -- if I could have

11  seen the deterioration that was causing.

12  But you just don't see it when you're

13  involved in it, you know, I had to step

14  outside of it, come in here, and ah, and

15  look back and see what it did to my life, to

16  realize just how terrible of a drug,

17  methamphetamines is. And that was my

18  biggest drug. I tried the cocaine, I ah,

19  I've even tried heroine in the past, didn't

20  like those, it was methamphetamines. And

21  ah, and now it's been 16 years, five months

22  and two days, I guess, clean and sober, so

23  I'm proud of it.

24      PRESIDING COMMISSIONER BRYSON: So,

25  you've been clean and sober the whole time

26  in here.

27      INMATE PATTERSON: Exactly.

1          PRESIDING COMMISSIONER BRYSON:

2     Congratulations.

3          INMATE PATTERSON:  When you wake up to

4     something like this, and you see what drugs

5     did to you -- I wanted to be a success, I

6     was raised on welfare, my biggest thing was

7     to have my children, I bought a home at 23

8     years old, I wanted to be a success.  Get

9     away from that welfare, I want to be a good

10    father to my children because my father

11    wasn't there and that was a driving goal for

12    me, and -- and drugs just took it all away.

13    Took it all away -- changed my whole way of

14    thinking.

15         PRESIDING COMMISSIONER BRYSON:  I

16    realize you don't want to talk about the

17    commitment offense, and you don't have to

18    answer this question, but I'd like to know,

19    were you on -- under the influence at the

20    time of the -- in the timeframe of this

21    crime?

22         INMATE PATTERSON:  Yes, I was.

23         PRESIDING COMMISSIONER BRYSON:  Okay.

24    And was meth a driving -- driving --

25         INMATE PATTERSON:  Yes, I'd been up

26    for several days on meth.

27         PRESIDING COMMISSIONER BRYSON:  Okay.

19

1    How would you characterize you -- and I know

2    you were inside yourself, so, but based on

3    things that happened in your life and not

4    just with the commitment offense, but with

5    other issues and incidents, whatever they

6    were, how would you characterize your

7    demeanor and your affect, whenever you were

8    on methamphetamine?

9              **INMATE PATTERSON:** You know what, on

10   it, ah, really high on it, without having --

11   'cause after a few days of use, you go to

12   this cranky, secluded, recluse of a person

13   that doesn't want to be around nobody, but

14   on the first couple of days of it, it makes

15   you very outgoing, you want to go and visit

16   people, ah, you know, with my wife and I, I

17   would try to talk her into doing it for late

18   night participation type -- you know, that

19   was -- that was the main thing, the reason

20   we -- her and I would use it, was for our

21   sex life, but then it escalated into this --

22   I would use it all the time and then it

23   became daily and then I started needing it

24   to get to work and -- and ah, so, the first

25   couple of days it makes you well outgoing

26   and then after that, you don't want to be

27   around nobody.

63

1      **PRESIDING COMMISSIONER BRYSON:**  Now

2  did your employer know that you were doing

3  drugs?

4      **INMATE PATTERSON:**  I don't ah, I would

5  -- I would think that maybe it was possible

6  that they knew, ah, but it wasn't something

7  that I just tried to put right out there in

8  front of them.

9      **PRESIDING COMMISSIONER BRYSON:**  Now

10  you say your wife was also doing drugs?

11      **INMATE PATTERSON:**  She was a -- at

12  first a weekend -- what we call a weekend

13  warrior?  She would do drugs on the weekend,

14  but she -- she later on tried to not do

15  them.  She ah, she was a mother and ah, and

16  those children were important to her and

17  apparently at that time more important to

18  her than they were me, because she tried to

19  talk to me about, you know, our children and

20  doing drugs and what it's going to do, and I

21  -- they even called ah, one of those Charter

22  hospitals or like a shit center, and tried
                        (shick)

23  to get me checked into those.  They called

24  me, like a few days before this crime, and

25  tried to get me to check in, and I just

26  wasn't seeing it.  You know, I just -- I

27  don't have a problem, what are you doing,

1   you know.  The illusions of drugs.

2          **PRESIDING COMMISSIONER BRYSON:**  Okay,

3   all right.  Commissioner, you have any

4   questions at this time?

5          **DEPUTY COMMISSIONER BENTLEY:**

6   (indiscernible).

7          **PRESIDING COMMISSIONER BRYSON:**  All

8   right, thank you.  Is there anything else, I

9   think, and we have before you what we have

10  in the Board Report, but is there anything

11  else about your ah, your prior history, that

12  you'd like to discuss, that you think would

13  help us understand you.  This is just prior

14  to the commitment offense.

15         **INMATE PATTERSON:**  No, other than that

16  I ah, I -- I really strove to be a good

17  person, and ah, I've never committed any

18  kind of ah, a violent acts toward anybody in

19  the past and I haven't since, and it's just,

20  I did this thing, and ah, and it's not me,

21  but those drugs did that to me, at that time

22  and my childish attitude about the drugs and

23  so.

24         **PRESIDING COMMISSIONER BRYSON:**  Okay,

25  all right then we'll go to Commissioner

26  Bentley for post-conviction factors.

27         **DEPUTY COMMISSIONER BENTLEY:**  All right,

1  thank you, good morning.

2        INMATE PATTERSON:  Good morning.

3        DEPUTY COMMISSIONER BENTLEY:  It's been

4  several years since I've seen you.

5        INMATE PATTERSON:  Yeah, back in '95.

6        DEPUTY COMMISSIONER BENTLEY:  Yeah, okay.

7  Your last Board Hearing was July 22nd of 2004.

8        INMATE PATTERSON:  Yes.

9        DEPUTY COMMISSIONER BENTLEY:  And you

10  came in March of '91 at CRIM, and then February

11  '95 you were -- came to CTF.

12        INMATE PATTERSON:  Yes.

13        DEPUTY COMMISSIONER BENTLEY:  Your

14  classification is currently 19 and you've picked

15  up a total of three 115s over the years, the

16  last one being May 2nd, of 2004, and that was

17  refusal to obey.  Why -- why would you refuse to

18  hand out the food?

19        INMATE PATTERSON:  Well, one -- there was

20  ah, a gather on the yard amongst the -- the

21  white inmates and the deal was that no white

22  inmates were going to be passing out trays, and

23  I had to take the 115.  I wasn't going to go

24  against what the majority said and that's my

25  life that's in danger.

26        DEPUTY COMMISSIONER BENTLEY:  It was --

27  was reduced to administrative.

22                                    66

23

1        INMATE PATTERSON:  Yes it was 'cause they

2    understood what happened.

3        DEPUTY COMMISSIONER BENTLEY:  And then

4    you have three counseling chronos and the last

5    one was in 2001 for failure to report to your

6    assignment.

7        INMATE PATTERSON:  Yes.

8        DEPUTY COMMISSIONER BENTLEY:  And was

9    your work since your last hearing, you've been a

10   porter in the mail room?

11       INMATE PATTERSON:  No.

12       DEPUTY COMMISSIONER BENTLEY:  And back in

13   2004, it said something like that?

14       INMATE PATTERSON:  No, I've never --

15       DEPUTY COMMISSIONER BENTLEY:  Cleaning,

16   wiping tables and stuff like that.

17       INMATE PATTERSON:  Oh no, I was -- I

18   worked in culinary.

19       DEPUTY COMMISSIONER BENTLEY:  Okay.

20       DEPUTY COMMISSIONER BENTLEY:  Okay.

21       INMATE PATTERSON:  On the mail room --

22   no.

23       DEPUTY COMMISSIONER BENTLEY:  Meal -- I

24   said meal.

25       INMATE PATTERSON:  Oh, meal, I'm sorry.

26       DEPUTY COMMISSIONER BENTLEY:  That's

27   okay, that's all right.

67

24

1        **INMATE PATTERSON:** Yeah.

2        **DEPUTY COMMISSIONER BENTLEY:** Then you --

3  you worked culin -- culinary and are you still

4  in that assignment?

5        **INMATE PATTERSON:** Yeah, but I'm no

6  longer out in the dining hall area, I'm back in

7  the pot room where we wash the pots and pans.

8        **DEPUTY COMMISSIONER BENTLEY:** Right, and

9  you're getting average to above average work

10  reports.

11        **INMATE PATTERSON:** Yes.

12        **DEPUTY COMMISSIONER BENTLEY:** And

13  vocationally you've completed welding in 1993.

14        **INMATE PATTERSON:** Yes.

15        **DEPUTY COMMISSIONER BENTLEY:** Would that

16  still be considered correct?

17        **INMATE PATTERSON:** Actually, welding I

18  believe is in '98.

19        **DEPUTY COMMISSIONER BENTLEY:** Oh, you

20  know I think you're right.  I think

21  (indiscernible) and I did get your

22  (indiscernible) certificate in here --

23        **INMATE PATTERSON:** Yeah.

24        **DEPUTY COMMISSIONER BENTLEY:** -- in this

25  report.

26        **INMATE PATTERSON:** Actually, there should

27  be like five of them.

24

68

25

1        DEPUTY COMMISSIONER BENTLEY:  Yeah, I
2   meant like the completed --
3        INMATE PATTERSON:  Oh, okay, okay.
4        DEPUTY COMMISSIONER BENTLEY:  -- you have
5   the -- yeah, you have the certificates for the
6   various aspects of it, but it shows that it's
7   totally completed.  And you have gotten involved
8   in AA and NA.  You started your first time, I
9   saw was in '96.  Was that correct?
10       INMATE PATTERSON:  Yeah, January 2nd, of
11  '96.  I had to get off close custody and then I
12  -- as a matter of fact, at that '95 hearing,
13  which you presided, that was the -- the issue,
14  is I was in close custody and you guys had told
15  me, and I said yes, soon as I get off close
16  custody they have -- you couldn't be in AA or NA
17  or participation in any of those kind of
18  programs while on close custody because of
19  counts.
20       DEPUTY COMMISSIONER BENTLEY:  Right.
21       INMATE PATTERSON:  Right.  So, I started
22  shortly after that hearing.
23       DEPUTY COMMISSIONER BENTLEY:  Okay, all
24  right.  Well, and I can see, (indiscernible)
25  cause you've consistently gone.
26       INMATE PATTERSON:  Yes, I have.
27       DEPUTY COMMISSIONER BENTLEY:  All through

25                                          69

1   the years, because you have chronos to back that

2   up, so what have you learned from that?

3        INMATE PATTERSON:  I've -- I've learned

4   quite a bit about addiction, actually.  And I've

5   taken addiction recovery programs also.  And

6   yesterday, as a mater of fact, I just took

7   another program for the last two days, but ah,

8   ah, addiction is a prob -- but see, I -- I was

9   addicted to drugs and I learned that also  I

10   smoked cigarettes and I did things excessively

11   and so I had that addicted personality.  So, I

12   think that ah, attending these 12 Step programs,

13   and I know they have a 12 Step Program for

14   everything now, but ah, you know, especially in

15   the line of drugs or drinking alcohol, there's

16   an addicted personality can re-do those things,

17   so, I've worked to control all that.  I -- I no

18   longer smoke, I drink one cup of coffee in the

19   morning --

20        DEPUTY COMMISSIONER BENTLEY:  Did you

21   quit 'cause you had to?

22        INMATE PATTERSON:  Nope.

23        DEPUTY COMMISSIONER BENTLEY:  At first,

24   not because you were required to do that.

25        INMATE PATTERSON:  Nope, I quit back when

26   I came to prison and woke up and seen ah, I came

27   to county -- the county jail, and seen what I