# EXHIBIT "C"

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JULY 2006 CALENDAR


PATTERSON, JODY                                                                    E88649


I. **COMMITMENT FACTORS:**

   A. **Life Crime:** Attempted Murder First Degree, PC 187 (a); one count with Use of Firearm. Case number C79650. Sentence: Seven years to Life. Life term starts 3/14/91. Victim: M. Mabry, age unknown. MEPD: 8/26/96.

   1. **Summary of Crime:** The crime occurred on 2/28/90 as Matt Mabry, Patterson's prior job foreman, drove his pick-up truck from the job site. As Mabry was coming to a stop, he heard a shot and the right passenger side window of his pick-up truck was shattered. He ducked down in the truck and when he peeked up, the second bullet struck the door, which fragmented the bullet, tore open his right arm, injured his neck and chest area. Bleeding, Mabry crawled out the driver's side door and looked back to the area where he heard the shots. He saw Patterson holding what appeared to be a 30/30 rifle, which was pointed at him. Mabry, ducked behind his truck, scurried across the street and started to run from the area but fell on the raised center median. Mabry was transported to a hospital where he underwent surgery to remove debris and fragments from his arm and chest. Police took Patterson into custody at his home that same day. Approximately two weeks prior to the crime, Mabry and Patterson had gotten into an argument regarding Patterson's poor workmanship. Mabry had Patterson transferred to a different job site due to their inability to get along. Patterson remained for a few days at the new job site before being laid-off due to lack of work. Mabry advised that on the day preceding the offense Patterson drove up behind him on the freeway after he left the job site in his truck, but he lost Patterson when he exited and made evasive maneuvers. The day of the offense, co-workers informed Mabry that Patterson had been on the job site the previous couple of days sitting in his vehicle and drinking. (Source: P.O.R., pages 3-8).

   2. **Prisoner's Version:** In an interview on 4-12-06 (with this author), Patterson stated that his version remains the same as stated in previous hearings. Patterson stated he had been transferred to a different job site by foreman/victim Mabry and subsequently laid-off. He began drinking and doing speed to compensate for his depression over being unemployed. He

Sent to Inmate on 6/21/06

placed blame for his job loss and failure to find other employment on Mabry and wanted to "kick his ass." The day prior to the offense, Patterson stated he had gone to the job site to confront Mabry, but Mabry drove away. Patterson followed him in his car but Mabry lost him in traffic. On the day of the offense, Patterson stated he had done some speed and began drinking beer. He drove around getting "madder and madder," then decided to return to the job site and "hurt" Mabry. Patterson drove to the job site and then to a parking structure located next to the job site. At that time, he decided to shoot at Mabry. After loading his rifle, he waited for Mabry to drive away from work. As Mabry drove toward the parking structure, Patterson fired two shots at Mabry's truck. Mabry exited the truck and attempted to hide behind it. Patterson aimed his rifle again at Mabry but did not fire another shot, stating he could not kill this man. Patterson stated he did not know if any of the shots had hit Mabry. Patterson stated he yelled something at Mabry, threw his gun into his car and drove away. Patterson stopped at a bar on the way home and telephoned his wife to ask if the police had arrived. After arriving home, he had his wife and children leave, as he did not want them to see him being arrested. Patterson admits what he did was wrong and he deserved prison for the crime. His remorsefulness appears genuine and he regrets (remorse) what transpired.

3.  **Aggravating/Mitigating Circumstances:**

   a.  **Aggravating Factors:** Per DOM 62090.11.2.1.1

       1.  During the commission of the crime the inmate had a clear opportunity to cease but instead continued.

   b.  **Mitigating Factors:** Per DOM 62090.11.2.1.2

       1.  The inmate has no history of prior criminal behavior.
       2.  The crime was committed during an unusual situation unlikely to recur.

B.  **Multiple Crime(s):** None.

   1.  **Summary of Crime:** None.

   2.  **Prisoner's Version:** None.

II. **PRECONVICTION FACTORS:**

A.  **Juvenile Record:**

3/20/80  Angelica, NY; Criminal Misdemeanor Reckless Driving; no disposition reported.

3/19/80  Angelica, NY; Unauthorized Use of Vehicle. (Source: CLET print out New York State).

B. **Adult Convictions and Arrests:** Vehicle code violations only with suspended license effective 6/5/90.

C. **Personal Factors:** Patterson is the youngest of four children born in New York to Kenneth and Shirley Patterson. His parents separated prior to his birth and his mother remarried and divorced his stepfather when he was three years old. The second marriage produced two brothers and a sister. He has not had any contact with his stepfather but at the age of 17 established and maintained contact with his father. His mother, who he previously considered an alcoholic, raised him. He moved out on his own at the age of 16. He indicated two college kids molested him when he was five years old and he had some counseling following this incident. He stated he graduated from high school in Angelica, NY, and attended Boces Vocational Trade School where he received a certificate in diesel mechanics. He relocated to southern California in 1981. He married Linda Patterson in 1982 and has a daughter and son. His daughter, April, is currently age 22. His son, Adam, is currently age 18. He maintains regular contact with his children. He divorced Linda in 1985. They remarried in 1987 and divorced again in 1994. In his early twenties, Patterson indicated he began experiencing mood changes as a result of his drug usage, which led to depression. After seeing a psychiatrist in 1983, he was placed on the drug lithium. In 1987, he attempted suicide by ingesting 85 to 100 Tylenol. He started taking the drug Prozac and attending counseling sessions once a week but ceased this treatment six months prior to his arrest. He indicated stable employment in construction since 1981. His use of alcohol has been social only but he has used marijuana regularly since the age of 14. He used cocaine occasionally and used LSD between the ages of 19 and 21. Commencing in his early twenties and up to the time of his arrest, he was abusing methamphetamine.

III. **POSTCONVICTION FACTORS:**

A. **Special Programming/Accommodations:** None

B. **Custody History:** Documents from the previous hearing (s) have been considered and that information remains valid. During this period of review Patterson remained at CTF Soledad, housed with MEDA custody, and with the general population. Patterson continued with his assignment to the Culinary at CTF

PATTERSON, JODY          E88649                    CTF-SOLEDAD          JUL/2006

>    North Facility up until 7-3-04. He was non-adversely moved to CTF Central
>    Facility, causing him to remain unassigned until 7-12-05. He was assigned to the
>    Central Culinary as a Dining Hall worker from 7-12-05 to 7-19-05. CDC 101
>    dated 7-14-05 reflects that he is "too new to evaluate". On 7-19-05, his job
>    assignment in the Culinary became one of a Pot Room worker. He remains in that
>    assignment to this present day. CDC 101's dated 10-1-05 and 1-1-06 reflect
>    ratings from supervisors as "above average" and "exceptional".
>
>    CDC 128B dated 11-11-05 reflects that Patterson successfully completed
>    Correctional Learning Networks "Job Success" course. He was issued a
>    Certificate of Completion to commemorate his outstanding work in this course
>    (Misc. section of C-file).

    C.    **Therapy and Self-Help Activities:** Patterson has continued with his active participation in Alcoholics Anonymous per CDC 128B's dated 7-9-04, 10-8-04, 4-1-05, 6-30-05, 8-9-05, 10-6-05, and 12-27-05. It should be noted that he has been a contributing member of A.A. since 1/1996. CDC 128B dated 12-7-04 reflects his active participation in Alcoholics Anonymous and Narcotics Anonymous. He has been a contributing member of A.A. / N.A. since 7/2002. CDC 128B dated 2-24-05 reflects that Patterson completed "Dr. Gordon's Family Effectiveness Training / Harmony in the Home" self help program. This program consists of six two-hour sessions covering a variety of topics. In addition, CDC 128C dated 1-19-05 indicates that Patterson requested membership in the "Cage Your Rage" Anger Management program. CDC 128C dated 2-25-05 indicates that Patterson requested to participate in the Advanced Anger Management Group and is on the waiting list for future openings. Refer to the Miscellaneous section of the C-File to view the "Certificates of Completion."

    D.    **Disciplinary History:** Patterson remained disciplinary-free during this period of review.

    E.    **Other:** On 7-22-04, Patterson attended his last BPT hearing and received the following decision and recommendations: 2 year denial of parole with recommendations to get no more CDC 115's or CDC 128A's, continue with a self-help program, and to stay disciplinary free. The BPT also ordered an Addendum to the Psychological Evaluation Report so as to address whether the inmate has any continuing "obsession" with the victim. This issue was raised at an earlier BPT hearing, per BPT 1001 form dated 7/22/04.

## IV. FUTURE PLANS:

    A.    **Residence:** In an interview with this author on 4-12-06, Patterson stated that he intends to reside upon parole with his father, Ken Patterson, at 2165 Sedco Heights Dr., Wildomar, CA 92595. Telephone number (909) 245-1366. Patterson

has been corresponding with a community based parolee assistance program entitled "U-Turn for Christ" as an alternate residence plan. Their address is 20170 Patterson Avenue, Perris, Calif 92570. Telephone # 909-943-7097. Support letters are on file. An alternative residence would be with his friends, Carol and Lance Smith, 3777 Hollycroft Dr. North Las Vegas, NV 89081. Telephone # (702) 547-6484. County of last legal residence is Riverside. Patterson states that updated support letters are forthcoming.

B. **Employment:** In an interview with this author on 4-12-06, Patterson stated that his short-term goal is to work in the construction field. However, his long-range occupational goal is to return to school for x-ray technician training and ultimately work in that field. He also has training and experience as a heavy equipment mechanic. He has a job offer from Robert Shepherd at Southwest Ditch, Inc., 3184 #B Chase Road, Riverside, CA 92501; (909) 781-4303; and from Joseph Moore at Four Stars Engineering, P.O. Box 401, Lake Elsinore, CA; (909) 245-9580. He also has a job offer with All Star Engineering utilizing his skills involving welding, truck driving, concrete, blueprint reading, and general labor. Their address is P.O. Box 1566 Wildomar, Calif. 92595. Telephone # (909) 245-9580. Joseph Moore, the owner, has extended this employment offer. Lastly, Patterson's brother, Kenny Patterson, is extending an additional two job offers. More information will be forthcoming when his brothers' support letter arrives. Refer to the Miscellaneous section of the C-File to view the aforementioned support letters.

C. **Assessment:** Considering all factors, including the degree of unconditional support offered by friends and family members (as evidenced by support letters), this writer does not foresee problems for Pattersons' readjustment back into society (provided that updated support letters are forthcoming).

V. **USINS STATUS:** Patterson is a United States citizen.

VI. **SUMMARY:**

A. Prior to release the prisoner could benefit from:

1. Continuing to remain disciplinary free.
2. Continued self help and therapy.
3. Ongoing participation in Alcoholics Anonymous / Narcotics Anonymous.
4. Updated letters of support.

B. This report is based upon 2 hours of Central File research, an interview with Inmate Patterson and incidental contact with the prisoner during this period of review.

C.  Inmate Patterson was afforded an opportunity to examine his Central File on 4-12-06.

D.  No accommodation was required per the Armstrong vs. Davis BPH Parole Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JULY 2006 CALENDAR

7

__C. Ellison__  6-13-06
C. Ellison,                    Date
Correctional Counselor I


__R. Leach__  6-15-06
R. Leach,                      Date
Correctional Counselor II


__R. Pope__  FC(A) 6-16-06
R. Pope,                       Date
Facility Captain


__D. S. Levorse__ C&PR  6/19/06
D. S. Levorse,                 Date
Classification and Parole Representative


PATTERSON, JODY       E88649          CTF-SOLEDAD          JUL/2006

1337

BOARD OF PRISON TERMS                                                                         STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 7/8/04 to 7/7/05 | | | **PLACEMENT**: Remained at CTF Soledad and continued to be housed with the general population.<br>**CUSTODY**: MEDA<br>**VOC. TRAINING**: NONE NOTED<br>**ACADEMICS**: NONE NOTED<br>**WORK RECORD**: Patterson continued with his job in the Culinary at CTF's North Facility until 7-3-04. He was non-adversely moved to CTF's Central Facility, causing him to remain unassigned until 7-12-05.<br>**GROUP ACTIVITIES**: Patterson continued with his active participation in Alcoholics Anonymous per CDC 128B's dated 7-9-04, 10-8-04, 4-1-05, and 6-30-05. It should be noted that he has been a contributing member of A.A. since 1/1996. CDC128B dated 12-7-04 reflects his active participation in A.A. / N.A and that he has been a contributing member since 7/2002. CDC 128B dated 2-24-05 reflects that Patterson completed "Dr. Gordon's Family Effectiveness Training / Harmony in the Home" self-help program. This program consist of six two-hour sessions covering a variety of topics. In addition, CDC 128C dated 2-25-05 indicates that Patterson requested to participate in the Advanced Anger Management Group and is on the waiting list for future openings.<br>**PSYCH. TREATMENT**: NONE NOTED<br>**PRISON BEHAVIOR**: Remained disciplinary free.<br>**OTHER**: On 7-22-04, Patterson attended his last BPT hearing and received the following decision and recommendations: 2 year denial of parole with recommendations to get no more CDC 115's or CDC 128A's, continue with a self help program, and to stay disciplinary free. The BPT also ordered an Addendum to the Psychological Evaluation Report so as to address whether the inmate has any continuing "obsession" with the victim. This issue was raised at an earlier BPT hearing (per BPT 1001 form dated 7-22-04). |

CORRECTIONAL COUNSELOR'S SIGNATURE
*C. Ellison*

DATE 6-13-06

PATTERSON, JODY    E88649                    CTF-SOLEDAD                    JUL/2006

BPT 1004 (REV 7/86)                 Page _1_                                          1341

BOARD OF PRISON TERMS                                                                                      STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 7/8/05 to 4-12-06 (present) | | | **PLACEMENT**: Remains at CTF Soledad and continues to be housed with the general population.<br>**CUSTODY**: MEDA<br>**VOC. TRAINING**: NONE NOTED<br>**ACADEMICS**: CDC 128B dated 11-11-05 reflects that Patterson successfully completed Correctional Learning Networks' "Job Success" course. He was issued a Certificate of Completion to commemorate his outstanding work in this course.<br>**WORK RECORD**: Patterson was assigned to the Central Culinary as a Dining Hall worker from 7-12-05 to 7-19-05. CDC 101 dated 7-14-05 reflects that he is "too new to evaluate." On 7-19-05, he became a Pot Room worker in the Culinary. He remains in that assignment to this present day. CDC 101's dated 10-1-05 and 1-1-06 reflect ratings of "above average" and "exceptional".<br>**GROUP ACTIVITIES**: Patterson has continued with his active participation in Alcoholics Anonymous per CDC 128B's dated 8-9-05, 10-6-05, and 12-27-05.<br>**PSYCH. TREATMENT**: NONE NOTED<br>**PRISON BEHAVIOR**: Remained disciplinary free.<br>**OTHER**: None noted. |

ORDER:
☐ BPT date advanced by ____ months.          ☐ BPT date affirmed without change.
☐ PBR date advanced by ____ months.          ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

PATTERSON, JODY          E88649               CTF-SOLEDAD                    JUL/2006

BOARD OF PRISON TERMS

BPT 1004 (REV 7/86)                          Page _2_                              1351

# DISCIPLINARY SHEET

## CDC 128A's:

| Date: | Specific Act: |
|---|---|
| 12/16/91 | FAILURE TO REPORT TO WORK |
| 11/13/96 | TALKING DURING COUNT |
| 11/06/01 | FAILURE TO REPORT TO WORK |

## CDC 115's:

| Date: | Institution: | Type: | Specific Act: |
|---|---|---|---|
| 01/26/92 | MCSP | 3005C | GAMBLING; GUILTY: 30 DAYS LOC |
| 04/07/02 | CTF | 3041A | REFUSAL TO WORK; GUILTY 30 DAYS LOC |
| 05/02/04 | CTF | 3005B | REFUSAL TO OBEY ORDERS; GUILTY: REDUCED TO ADMIN. COUNSELED & REPRIMANDED |

PATTERSON, JODY        E88649              CTF-SOLEDAD         JUL/2006

1361

# EXHIBIT "D"

*PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PAROLE HEARINGS*
*REVISED SEPTEMBER 1998*
*PAROLE CONSIDERATION HEARING*
*AUGUST 2006 LIFE-TERM INMATE CALENDAR*

CORRECTIONAL TRAINING FACILITY, SOLEDAD
JUNE 26, 2006

This is approximately the third report prepared for the Board of Parole Hearings on inmate Jody Patterson, CDC# E-88649. He is currently serving a Life term for Attempted First Degree Murder. The date of the offense was 02/28/90, when the inmate was 26 years old. This report is based upon a review of the inmate's Central file and unit health record, and a specific interview with the inmate conducted on 06/26/06.

### CLINICAL ASSESSMENT

XII. **CURRENT MENTAL STATUS/TREATMENT NEEDS:**

Inmate Patterson presents as an appropriately groomed, cooperative man who appears his stated age. There are no psychomotor abnormalities. No abnormal involuntary movements are discerned. Eye contact is good, and facial kinetics are expressive. His speech is prompt and spontaneous, of normal tone and tempo. The process of thought as reflected in speech is organized and coherent. Receptive language comprehension is grossly intact. His affect as expressed in speech and demeanor is appropriate to the situation.

**CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):**

*AXIS I:*     Polysubstance Abuse, in remission in a controlled environment.
*AXIS II:*    No diagnosis.
*AXIS III:*   Deferred.
*AXIS IV:*    Incarceration.
*AXIS V:*     GAF = 90.

The inmate had a history of substance abuse dating back to his mid-teens, and including marijuana, alcohol, cocaine, and especially methamphetamine. He was reportedly hospitalized for treatment of substance abuse and consequential mood swings, and was evidently misdiagnosed as having a bipolar disorder and started on psychotropics, including lithium. In 1987, he made a suicide attempt, when he

PATTERSON, JODY
CDC NUMBER: E-88649
BPH PSYCHOLOGICAL EVALUATION
PAGE TWO

overdosed. According to the records, he was undergoing severe depression and mood swings for some time prior to the commitment offense, for which he was prescribed lithium and Prozac. However, he states that his treating psychiatrist did not know that he was simultaneously still using illicit substances, especially methamphetamines. After his imprisonment, he reportedly was given a more thorough psychiatric evaluation in the context of abstinence from illicit substances, and the diagnosis of bipolar disorder was rescinded. During his subsequent imprisonment, he has not therefore required any psychotropic medications and has not demonstrated any abnormalities of mood or other emotional disorder.

According to his Central file, he has participated in Alcoholics Anonymous and Narcotics Anonymous for many years. He has not received any disciplinary articles related to substance possession/use. He describes his one-time addiction to cocaine and methamphetamines as stemming from the energy and sense of well-being that they gave him, and then the necessity to keep on using to prevent overall depression. He relates that after the commitment offense, he realized the devastating effect that his drug addiction had upon himself and others, and stopped using drugs within the prison setting.

XIII. REVIEW OF LIFE CRIME:

Inmate Patterson's version of the offense is consistent with previous statements made by him, and with the Statement of Facts in the POR. He states that around the time of the offense, his drug habit had gotten out of control, and that looking back, he deserved to be fired from his job. He states that he was fired 26 days prior to the shooting, but initially got over his anger and continued to abuse drugs. However, he states that when the money ran out, he started getting desperate, emptied out all of the bank accounts, and was spending five to six hundred dollars per week on illicit substances. He states that at that time the bills were piling up, there was a new baby, and his wife was screaming at him to get a job. He states that he would try to get jobs, but would not be hired, and he began to blame the victim, Mr. Mabry, for getting him fired, and also began to wonder if Mr. Mabry did not have a hand in keeping him from getting hired. He states that it was about a week prior to the offense when he began to think about harming Mr. Mabry, but at first, started thinking about picking a fight with him. He states that it was the day prior to the shooting that he got the idea of killing him. He states that he also

PATTERSON          E-88649          CTF-SOLEDAD          06/26/06          gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPH PSYCHOLOGICAL EVALUATION
PAGE THREE

had the strange idea that if he went to prison, his credit cards would be paid off. He states that on the date of the crime, he did try to shoot the victim, but then after he fired several rounds, he had a change of heart, and did not attempt to follow through. However, he says he remembers thinking at the time, "That'll serve you right," which he now looks back on as being extremely childish and aberrant.

With regard to remorse, his attitude does not suggest continued hostility or debasement towards the victim. He states that prior to the crime, he admired Mr. Mabry, and looking back, still does, as being a professional in his job. He acknowledges that Mr. Mabry didn't deserve to be shot, and he is sorry for not only shooting him, but for the chronic fear that he has instilled in him all these years.

Per the BPH's request, I inquired into inmate Patterson's parole plans, which a prior panel had thought suggested an obsession with Mr. Mabry because it included jobs in the vicinity of the area where Mr. Mabry lives. Inmate Patterson responds that the offer of residence in Hesperia was from several friends, who made the offer without his consent. He states that he has offers of residence and work in South Riverside County, the county of his commitment. He denies any lingering animosity or blame towards Mr. Mabry and denies any intention of seeking him out for any kind of revenge.

Realistically, if inmate Patterson did have any kind of desires for revenge on the victim, for which there is no current evidence, the place of his intended residence/employment would not hinder him in that intent, regardless of where it was. Therefore, this appears to be a non-issue.

XIV.  ASSESSMENT OF DANGEROUSNESS:

 A. Within a controlled setting, this inmate's violence potential is nil. In the 16 years since the commitment offense, he has not demonstrated any aggressive behavior, as evidenced in his Central file disciplinary section.

 B. The significant risk factors/precursors to violence that applied at the time of the commitment offense were a continuous pattern of heavy illicit substance abuse which caused a secondary major mood disorder, which was in turn exacerbated by the admixture of prescription psychotropics,

PATTERSON E-88649 CTF-SOLEDAD 06/26/06 gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPH PSYCHOLOGICAL EVALUATION
PAGE FOUR

        leading to a chronically aberrant mental state. Just prior to the commitment offense, he reportedly was using methamphetamines even more heavily than usual, and in that frame of mind not only blamed the victim, but also had evident paranoid ideas about him, as well as some quasi-delusional ideas about going to prison as a way of paying off his credit card debt. However, in the 16 years since the offense, there is no evidence, as noted, that he has continued to abuse illicit substances, and has shown an awareness of addiction to them and the deleterious consequences of that addiction. Based upon his lack of prior aggressive offenses and lack of subsequent aggressive behavior, it seems clear that the commitment offense was not the product of an habitually aggressive, criminally oriented individual, but rather an aberration secondary to substance abuse and substance-induced mental disorder.

C.     Therefore, taken together with clinical data, this suggests that his violence potential at the current time if paroled to the community would be estimated to be low in comparison with the average inmate, assuming continued abstinence from alcohol/illicit substances.

XV.     **CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:**

Inmate Patterson should continue with his AA/NA programming, but otherwise there are no recommendations from a psychological standpoint.

*Lance A. Portnoff, Ph.D.*
*Staff Psychologist*
**Correctional Training Facility, Soledad**

PATTERSON, JODY
CDC NUMBER: E-88649
BPH PSYCHOLOGICAL EVALUATION
PAGE FIVE

*[signature]* B. Zika, Ph.D.

*Error BZ*

B. Zika, Ph.D.
*Senior Supervising Psychologist*
*Correctional Training Facility, Soledad*

LAP/gmj

D: 06/26/06
T: 06/26/06

C:\Documents and Settings\gjorgensen\My Documents\00 - BPT REPORTS - 2006\PATTERSON  E-88649  08-06  PORTNOFF.doc

# EXHIBIT "E"

143