PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
JANUARY 2004 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
NOVEMBER 7, 2003

NAME: PATTERSON, JODY DION
CDC #: E-88649
DOB: 04/12/63
AGE: 40
RACE: Caucasian
SEX: Male
MARITAL: Divorced
RELIGION: Christian
EVALUATION DATE: 11/07/03

CRIME: Attempted Murder, First Degree
TERM: Life
OFFENSE DATE: 02/28/90
ARREST DATE: 02/28/90
SENTENCE DATE: 03/08/91

EVALUATOR: J. Steward, Psy.D.
Clinical Psychologist
INSTITUTION: Correctional Training Facility, Soledad, CA

This is the sixth psychological evaluation for the Board of Prison Terms on inmate Jody Dion Patterson, CDC# E-88649. This report is based upon a personal clinical interview with inmate Patterson, conducted on 11/07/03, with a review of his Central file and unit health record.

## PSYCHOSOCIAL ASSESSMENT

I. **IDENTIFYING INFORMATION:**

Inmate Patterson is a 40-year-old, divorced, Caucasian male, born 04/12/63, serving a life sentence for Attempted Murder, First Degree.

Inmate Patterson is a Christian. He has several tattoos, the last of which was applied in 1995. On his right forearm, there is a panther, and on his right biceps, there is a star and headstones for each year he has been incarcerated; with the word "white" on his right triceps area. He has one tattoo on his left forearm, and on his left biceps a picture of Yosemite Sam, and on his left biceps is the word "pride". After his daughter asked him to not have any more tattoos placed upon him, he ended this practice out of respect and love for his daughter. Among friends, he occasionally goes by the nickname, "J.D". He does not use any aliases.

PATTERSON          E-88649          CTF-CENTRAL          11/07/03          gmj

144

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE TWO

II. **DEVELOPMENTAL HISTORY:**

Inmate Patterson does not have a history of abnormalities, his birth was normal (according to available information), and he completed developmental milestones appropriately (speech, language, motor development). A tragic event occurred in his life when five years old. Two teenage boys who lived above his family befriended him initially, but then cajoled five-year-old Jody Patterson to practice sodomy with one of them. This was a single event by one teenage boy, and after reporting this to his mother, he received counseling, and there have been no significant residual symptoms. However, it took some time for inmate Patterson to realize at the young age of five years old, he was not a willing participant, but was actually duped, manipulated, and treacherously deceived by older boys whom he thought were his friends. There have not been any other incidents of childhood physical or sexual abuse, as either a perpetrator or a victim. It is to inmate Patterson's credit that he states, "I could never, and would never, do such a thing to a child," since many current molesters were once abused themselves.

III. **EDUCATIONAL HISTORY:**

Inmate Patterson attended public and completed the 11th grade, receiving a high school diploma. While attending high school, he also received two and a half years of college credit when attending a vocational school, where he earned a certificate in agriculture and industrial mechanics in 1981. His measured grade point level is 12.9. He does not have a history of special education, or academic or behavioral problems in school. Currently, he is not involved in educational activities.

IV. **FAMILY HISTORY:**

Inmate Patterson was born to Ken Patterson and Shirley Cannioto while they were divorced. Inmate Patterson has three other siblings by the union of his parents, Gary, age 51; Dwayne, age 50; and Linda, age 48. When inmate Patterson was three months old, in 1963, his mother married his stepfather, Mr. Cannioto, which was a tumultuous, abusive and violent relationship, ending in 1965, when inmate Patterson was two years old, with a divorce and separation. According to inmate Patterson, his stepfather never abused him, but was violently abusive to his mother, requiring at least two hospitalizations. Mr. Cannioto and Shirley Cannioto gave birth to Brenda, age 38; and Larry, age 32, and Jimmy, who at 17 years old died of leukemia.

Inmate Patterson's mother, Shirley Cannioto, age 70, who is an alcoholic, lives in New York, and his father, Ken Patterson, age 72, lives in Lake Elsinor, California.

PATTERSON        E-88649        CTF-CENTRAL        11/07/03        gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE THREE

V. **PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:**

Inmate Patterson entered puberty when he was approximately 12 to 13 years old, and had his first sexual experience when 17 years of age. He had sex with five to six women prior to marrying his wife when 19 years old. He denied any history of sexual aggression of high-risk sexual behavior.

VI. **MARITAL HISTORY:**

Inmate Patterson has been married twice to the same woman. The first marriage to Linda Patterson in 1982, ended in a 1986 divorce. They remarried in 1987, but then divorced in 1994 following his incarceration. There has not been a history of abuse in this relationship, and they have maintained a friendly, cordial relationship with one another. During this marriage, they gave birth to two children, April, age 20, and Adam, age 16. Inmate Patterson's father, Ken Patterson, would bring the children to visit approximately once a year, but since he has become ill, the last visit was in 2000. Inmate Patterson has a good relationship with his children, and there is not a history of abuse in these relationships either. It is quite visible that inmate Patterson truly loves his children, and cares about them deeply.

VII. **MILITARY HISTORY:**

The records indicate that inmate Patterson does not have a military history.

VIII. **EMPLOYMENT/INCOME HISTORY:**

Inmate Patterson's preincarceration work history includes 2.5 years as a union carpenter, 6 years as a truck and forklift driver, and 10 years working on his aunt and uncle's dairy farm.

Since his incarceration, inmate Patterson has become a certified welder (1998), and was a lieutenant's clerk, but he had to decline this third watch (night hours) job because he was unable to adjust to sleeping during the day.

IX. **SUBSTANCE ABUSE HISTORY:**

Inmate Patterson acknowledges and accepts responsibility for abusing amphetamines, cocaine, and marijuana prior to his incarceration. However, immediately following the attempted murder, when he found himself awakening in the county jail, inmate Patterson terminated any use of illegal drugs.

Inmate Patterson has regularly attended Narcotics Anonymous from 1996 to 2000, and since being moved to Central Facility at CTF, where only Alcoholics Anonymous is offered, he has attended meetings from 2000 to the current date.

PATTERSON          E-88649          CTF-CENTRAL          11/07/03          gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE FOUR

Though inmate Patterson had a substance abuse history, he has successfully abstained from all illegal drug use, which is an denied ever using the more deleterious street drugs, but admitted to using marijuana frequently, starting at age 12, up until the early 1990s. He would also regularly consume beer. He has voluntarily abstained from drug use, which is an achievement in a prison environment where illegal drugs are plentifully accessible.

X. **PSYCHIATRIC AND MEDICAL HISTORY:**

Inmate Patterson technically is diagnosed with polysubstance abuse disorder, but this is in full remission, and is very unlikely to create any problems in the future.

In 1984, inmate Patterson was hospitalized briefly for an overdose on Tylenol. During this period, he was diagnosed with a bipolar disorder, and treated with psychotropic medication for approximately three years. However, based upon the current interview, while being treated for bipolar disorder, he was using methamphetamines and other drugs, but did not report this to the treating psychiatrist. Consequently, the symptoms (which were actually caused by substance abuse) appeared to be bipolar in nature, thus he was being treated for a non-existent mental disorder. Though it would be reasonable to rule out (or rule in) that an underlying bipolar disorder was driving his use of illegal drugs, this does not appear to be a very likely scenario, since he has not exhibited bipolar symptoms since his incarceration. He stopped receiving psychotropic medication in 1991, and has been symptom-free since he terminated the use of illegal drugs.

Inmate Patterson does not have a history of seizures or other neurological condition. He does not have any significant impairments or illnesses, and is currently not taking any medication.

XI. **PLANS IF GRANTED RELEASE:**

If granted parole, inmate Patterson intends to live in Riverside, California, with his father, who is very amenable to this arrangement. As regards employment, inmate Patterson will either work for Mann Industries as a welder and a mechanic, or with Forrest Engineering, or with another construction company whose name he cannot recall at this time. His prognosis for living in the community is good, and his plans are realistic.

CLINICAL ASSESSMENT

XII. **CURRENT MENTAL STATUS/TREATMENT NEEDS:**

In the process of this clinical interview, inmate Patterson was alert, oriented to person, place and time, maintained good eye contact, and was well dressed and

PATTERSON        E-88649        CTF-CENTRAL        11/07/03        gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE FIVE

groomed. His speech was articulate, rational, and meaningful. He experienced expected, mild levels of anxiety which led to some over-explanation and loquaciousness, but he was very responsive to the evaluator, indicating he did not mean to excessively explain. There was some minor difficulty in distinguishing between contextually relevant and irrelevant information, but this is merely and observation, and will not preclude recommendations for parole. His mood and his affect were within normal limits, and his behavior was appropriate. There is not any evidence for a mood or thought disorder. His intellectual functioning is within the average range. He also demonstrated good judgment and insight. His impulse control is adequate in the context of interacting socially with others. As regards any violence potential, his impulse control is very good to excellent.

CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):

AXIS I:    Polysubstance Abuse, in full remission.
           Attention Deficit Traits.
AXIS II:   No Contributory Personality Disorder.
AXIS III:  No Contributory Physical Disorder.
AXIS IV:   Incarceration.
AXIS V:    GAF = 85.

In this particular context, it should be noted inmate Patterson has made extensive use of the treatment opportunities while incarcerated. In 1994, he completed the Alternatives to Violence Program. In 1995, he completed the Literacy Lifeskills Program, and in 1996 he regularly attended Narcotics Anonymous and other self-help programs. In 1997, he completed individual therapy with Dr. Terrini, and in 1998 completed the Life Skills Group with the same psychologist. Also in 1998, he completed one year of Entrepreneurial Development, and in 1999 completed the Positive Thinking Program. It is obvious from this substantial track record of program involvement and successful completion that inmate Patterson has demonstrated mature, responsible behavior as he is motivated to improve himself and his relationships.

XIII. REVIEW OF LIFE CRIME:

Inmate Patterson admits full responsibility for the attempted murder, first degree. In the course of the clinical interview, inmate Patterson's insight and humility for his mistakes was quite apparent as he discussed how the interaction of drugs, losing his job, contributing to the loss of his job, and his projection of blame upon his former supervisor, led him to commit a very reckless, irrational act. Essentially, as inmate Patterson increased his drug use, his job performance became poor and inconsistent. In the vernacular, his job performance was shoddy and messy. As the supervisor attempted to hold him accountable for appropriate performance, a "personality conflict" developed, resulting in inmate Patterson being transferred to a new position with another supervisor. However, his job performance continued to be poor, and he was terminated within three days. After

PATTERSON          E-88649        CTF-CENTRAL        11/07/03        gmj

148

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE SIX

several weeks of further drug use and being unable to locate a new job, inmate Patterson became more angry and irrational, and blamed the first supervisor for his predicament. He was also having marital problems, and intended to kill the first supervisor, Matt Mavery (the victim).

Inmate Patterson apparently wanted to confront the supervisor, Matt Mavery, but was afraid or hesitant to do so. As his anger increased when under the influence of illegal drugs, he appeared to stalk Matt Mavery. This culminated in him using a 30-30 rifle to kill Mr. Mavery. Inmate Patterson shot the right front cab window out, and then shot into the cab, wounding Mr. Mavery in the shoulder. The victim, Matt Mavery, then exited the vehicle and hid behind the truck. At this moment, not knowing he had injured Mr. Mavery, inmate Patterson suddenly realized the severity and the destructive nature of his actions. He heard the victim, Mr. Mavery, crying for help and begging for others' assistance. He suddenly realized that he did not want to kill Mr. Mavery, regretted his actions, and had essentially achieved his purpose by scaring his former supervisor. Not knowing he had actually shot his former supervisor, inmate Patterson felt at least vindicated by the victim's crying for help, who was now experiencing the helplessness and the powerlessness he felt after losing his job. Inmate Patterson wanted to make it quite clear that the sense of vindication certainly never justified his actions, abusing a firearm to threaten and potentially kill someone.

It is laudable to note that inmate Patterson truly accepts responsibility for his actions, acknowledging the wrongfulness of attempting to take another's life without justification, and fully accepts responsibility for abusing drugs, which seriously distorted his reasoning, judgment, and impulse control, which led to this attempted murder. Unfortunately, it took this severity of consequence for inmate Patterson to receive a "wake-up call" to the destructive direction of his life by illegal drug use.

XIV. ASSESSMENT OF DANGEROUSNESS:

    A.    Inmate Patterson's violence potential within a controlled setting is significantly below the average relative to a level II inmate population.

           His juvenile criminal history and adult preincarceration criminal histories are minimal. In addition, this is his first incarceration, and he has not received any significant disciplinaries in the last 11 years. Further, none of the disciplinaries have been of a violent nature. As consistent with Dr. Reed's report, inmate Patterson has indeed matured and profited from his participation in self-help programs.

    B.    If inmate Patterson is released to the community, his violence potential is considered to be no more than the average citizen.

PATTERSON    E-88649    CTF-CENTRAL    11/07/03    gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE SEVEN

The difficulties he encountered in the community prior to incarceration were the actions of an immature, self-centered, and indulgent person when he was convicted of reckless driving at age 16, and was convicted of driving with a suspended license as an adult. There is absolutely no evidence that he would ever pursue these actions again. As an adult who is now 40 years old, wiser, and much more self-aware, and aware of how his actions impact others. His potential for violent or criminal behavior is no more than that of the average citizen in the community.

C. The primary risk factor for inmate Patterson is substance abuse, which may act as a precursor to violence. However, given the fact illegal drugs are illicitly plentiful and available in prison, he has not used any in the almost 14 years of incarceration. When placed in the county jail, he suddenly became aware how illegal substances had forever altered his life, and potentially killed another person.



Inmate Patterson deeply regrets the violent actions he took against Mr. Matt Mavery because, as himself, Mr. Mavery has children, a wife, and a life that he greatly values. Inmate Patterson wishes for, but understands it possibly unattainable, to have wishes for, but understands it possibly unattainable, to have Mr. Mavery forgive him for his violent and potentially irreversible deadly action. Because inmate Patterson experiences such deep remorse and regret, he truly wishes it was possible to reconcile with Mr. Mavery, although he understands Mr. Mavery's continued anger and inability to forgive him. In my opinion, inmate Patterson does not want to seek relief from his actions, but wants to convey to Mr. Mavery the sincerest and profound regret he feels for terrifying him and injuring him.

XV. CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

1. Inmate Patterson is competent and responsible for his behavior. He has the capacity to abide by institutional standards.

2. This inmate does not have a mental health disorder which would necessitate treatment, either during his incarceration period or following parole.

3. Inmate Patterson has a drug abuse problem, and it is recommended that he continue to participate in Narcotics Anonymous, as he has diligently and responsibly done so while incarcerated. Active involvement in either Narcotics Anonymous or Alcoholics Anonymous should be a requirement while paroled.

PATTERSON        E-88649        CTF-CENTRAL        11/07/03        gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT MENTAL HEALTH EVALUATION
PAGE EIGHT

4. Given all of the available information presented in his record and in the clinical interview, inmate Patterson's prognosis for successful community living is good to very good, and it is anticipated he will maintain his sobriety from drugs and become a successful, contributing member of society, which had been derailed by substance abuse over 14 years ago.

J. STEWARD, Psy.D.
Clinical Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD

BILL ZIKA, Ph.D.
Senior Supervising Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD

JS/gmj

D: 11/07/03
T: 11/20/03

# EXHIBIT "F"

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
JANUARY 2003 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
AUGUST 23, 2002

Inmate Jody Patterson, CDC# E-88649, was seen for a psychological evaluation for the Board of Prison Terms by Joe Reed, Ph.D., Staff Psychologist at the Correctional Training Facility (CTF), on 09/18/00 for the December 2000 Lifer Calendar.

According to the instructions given to Wardens and Health Care Managers by Steven Cambra, Jr. (CDC), and G. Lewis Chartrand, Jr. (BPT) in September 1998, once a mental health evaluation is completed in the new format, revised in August 1998, a new evaluation is not necessary when an inmate appears before the Board of Prison Terms unless the BPT has filed a BPT 1000A request for a new report.

Since there is no BPT 1000A request on file, a mental health evaluation was not conducted at this time.



BILL ZIKA, Ph.D.
Senior Supervising Staff Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD

BZ/gmj

D:  08/23/02
T:  08/23/02

PATTERSON        E-88649        CTF-CENTRAL        08/23/02        gmj

153

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 2000 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
SEPTEMBER 18, 2000

This is a psychological evaluation for the Board of Prison Terms for inmate Jody Patterson, CDC# E-88649. This report is based upon a personal clinical interview of the inmate, conducted on 09/18/00, as well as a review of his Central file and unit health record. This clinical interview and a review of all pertinent documents were for the express purpose of preparing this report.

PSYCHOSOCIAL ASSESSMENT

I.   IDENTIFYING INFORMATION:

Inmate Patterson is a 37-year-old, divorced, Caucasian male whose date of birth is 04/12/63. His stated religious affiliation is Christian. No obvious unusual physical characteristics were observed. He acknowledged having used the nickname of "J.D.". He denied using any aliases.

II.  DEVELOPMENTAL HISTORY:

Inmate Patterson has no history of abnormalities of developmental milestones, including speech, language or motor development. However, he did report that when he was five years of age he was sexually abused in a single encounter by a teenage boy. He said that he subsequently received counseling for this episode and that there were no significant residual symptoms. He said that there is no other childhood history of physical or sexual abuse as either a perpetrator or a victim.

III. EDUCATIONAL HISTORY:

Inmate Patterson stated that he attended public school and completed the 12th grade, receiving his high school diploma. Also, during this time, he received two and a half years of college credit, ultimately obtaining

PATTERSON        E-88649         CTF-NORTH          09/26/00         gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

certification in agriculture and industrial mechanics in 1981. His measured grade point level is 12.9. He has no history of special education or academic or behavioral problems in school. He currently has no involvement or interest in educational activities.

IV. FAMILY HISTORY:

This inmate reported that there is no significant history of crime or drug abuse in his family. He generally described his current relationships with his family members as good with no history of abuse.

V. PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

Inmate Patterson is a heterosexual male. He denied any history of sexual aggression or high-risk sexual behavior.

VI. MARITAL HISTORY:

Inmate Patterson stated that he has been married two times, twice to the same woman. His first marriage began in 1982 and ended in divorce in 1986. He was subsequently remarried to the same woman in 1987 and then divorced in 1994 due to incarceration-related problems. He states that there is no history of abuse in this relationship and that he has maintained friendly relations with his ex-wife. He further reported that he has two children from this marriage, a 17-year-old daughter and a 13-year-old son. He said he sees them one time a year, with frequency of visitation limited by distance. He said that he has maintained good relations with his children and that there is no history of abuse in these relationships.

VII. MILITARY HISTORY:

The records indicate this inmate has no military history.

VIII. EMPLOYMENT AND INCOME HISTORY:

Inmate Patterson's preincarceration work history includes working two and a half years as a carpenter in a union, working six years as a truck driver and

PATTERSON    E-88649    CTF-NORTH    09/26/00    gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

forklift driver, and working ten years in farm work. His incarceration work history includes becoming certified in 1998 in welding. He currently works as a lieutenant's clerk.

IX. SUBSTANCE ABUSE HISTORY:

This inmate acknowledged that he has abused amphetamines, cocaine and marijuana in the past. He reported that he has regularly attended Narcotics Anonymous from 1996 until the current date. This inmate does have a substance abuse history.

X. PSYCHIATRIC AND MEDICAL HISTORY:

This inmate has recent psychiatric diagnoses of Polysubstance Abuse, in institutional remission, and Antisocial Personality Disorder, improved. In 1984, he was briefly hospitalized for an overdose on Tylenol. At this time, he was diagnosed with Bipolar Disorder and treated with psychotropic medication for three years. However, he has not received psychotropic medication for Bipolar Disorder since 1991 and he has not demonstrated relevant symptoms since that date. Consequently, it appears most likely that his former Bipolar Disorder was in error, and that his previous symptoms were secondary to amphetamine abuse (see CDC-128 chrono dated 04/19/91, Dr. Alumbaugh and Dr. True).

This inmate has no history of seizure or other neurological conditions. He has no significant impairments or illnesses and is currently taking no significant medication.

XI. PLANS IF GRANTED RELEASE:

If granted parole, this inmate plans to live in Orange County by himself. Alternatively, he prefers to live in Riverside County with his father, who has agreed to this arrangement. His financial and vocational plans include working for Mann Industries as a welder and mechanic. His prognosis for community living appears well grounded and supports a positive prognosis for successful community living.

PATTERSON        E-88649        CTF-NORTH        09/26/00        gmj

PATTERSON, JODY
CDC NUMBER: E-88649
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

### CLINICAL ASSESSMENT

XII. **CURRENT MENTAL STATUS/TREATMENT NEEDS:**

During the clinical interview, inmate Patterson was alert and oriented to person, place and time. He was well dressed and groomed. His speech was articulate and contextually meaningful. His mood and affect were within normal limits and his behavior was appropriate to the setting. No evidence of a mood or thought disorder was demonstrated. His estimated level of intellectual functioning was within the average to above average range. He demonstrates good judgment and insight currently.

**CURRENT DIAGNOSTIC IMPRESSIONS:**

AXIS I:    Polysubstance Abuse, in sustained full remission in a controlled environment.
AXIS II:   Antisocial Personality Disorder (by history only).
AXIS III:  No Contributory Physical Disorder.

In addition to attending Narcotics Anonymous regularly from 1996, inmate Patterson has attended a number of other self-help programs. In 1999, he completed the Impact program and attended the Mulatti-Islami program. In 1998, he completed the Life Skills group with Dr. Terrini at CTF. In 1997, he completed individual therapy with Dr. Terrini. In 1995, he completed the Literacy Life Skills program, and in 1994 he completed the Alternatives to Violence program. While not found in the medical record, this inmate states that he also completed in 1999 the Positive Thinking program, and in 1998 completed the one year Entrepreneurial Development program.

XIII. **REVIEW OF LIFE CRIME:**

This inmate admitted full responsibility for the crime. He insightfully observed that he was using drugs and that he was fired from his job, that he got caught up with his problems, had been up for several days using amphetamines, and acted in a very stupid manner in regards to the instant crime. His crime involved

PATTERSON        E-88649        CTF-NORTH        09/26/00        gmj

157