***E-FILED - 3/31/10***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JODY D. PATTERSON,<br><br>Petitioner,<br><br>vs.<br><br>BEN CURRY, Warden,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. C 07-5579 RMW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY AS UNNECESSARY |

Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("Board") decision denying his suitability for parole on August 2, 2006. The court issued an order to show cause why the writ should not be granted. On November 17, 2008, respondent filed an answer. On December 8, 2008, petitioner filed a traverse. Having considered all of the papers filed by the parties, the petition is DENIED.

**BACKGROUND**[1]

In early February 1990, petitioner's former supervisor Matt Mabry ("victim") and petitioner got into an argument about petitioner's poor workmanship. (Transcript, p. 7.)

---

[1] The relevant facts pertaining to the underlying crime are taken from the transcript of the August 2, 2006 parole suitability hearing. (Resp. Ex. 1, Ex. B ("Transcript").)

Because they could not get along, the victim transferred petitioner to a different job site. (Id.) After a few days at the new job, petitioner was laid off due to lack of work. (Id.) On February 27, 1990, petitioner drove up behind the victim on the freeway, but the victim eventually lost him. (Id.) Co-workers told the victim that petitioner had been hanging around the victim's job site for a few days, just sitting in his vehicle and drinking. (Id.)

On February 28, 1990, the victim drove away from his job site. (Id. at 6.) As he came to a stop, he heard a shot and his right passenger side window shattered. (Id.) The victim ducked down and peeked out, and a second bullet struck the door. (Id.) That bullet went through his right arm, also injuring his neck and chest. (Id.) The victim crawled out of his vehicle and saw petitioner holding a rifle, which was pointed at him. (Id.) The victim ran and was eventually transported to a hospital. (Id. at 7.)

In 1991, petitioner was sentenced to an indeterminate seven years to life sentence in prison after his conviction in Orange County Superior Court for attempted murder (Cal. Penal Code §§ 664(a), 187). Petitioner's minimum parole eligibility date was August 26, 1996. (Transcript, p. 2.) As of the 2006 parole suitability hearing, petitioner's seventh one, petitioner had been incarcerated for approximately 16 years.

At the August 2006 parole suitability hearing, petitioner testified that he had a history of using methamphetamine and that he was high on drugs when he committed the underlying crime. (Id. at 17, 18.) However, petitioner stated that since being incarcerated, he had been sober for over 16 years. (Id. at 17.)

Petitioner received three 115's[2] over the years, the last one being in 2004 for refusing to hand out food. (Id. at 22.) That was reduced to an "administrative counsel" after petitioner explained to prison officials the circumstances surrounding his refusal. (Id. at 22, 51.) Petitioner

[2] 115's are citations for major violations. In 1992, petitioner was cited for gambling. In 2002, petitioner was cited for refusing to work. And, in 2004, petitioner was cited for refusing to obey orders. (Resp. Ex. 2, p. 3; Ex. 1, Ex. C)

also incurred three 128A's[3] during his incarceration. (Id. at 23.)

Petitioner received average to above average work reports. (Id. at 24.) He also finished a welding course in 1998. (Id. at 24.) Petitioner started attending Alcoholics Anonymous and Narcotics Anonymous in 1996 and has been consistent about going to sessions. (Id. at 25.) Petitioner has taken classes such as Economic Education for Consumers, Business Education in Self-Study Course for Self-Improvement, and pre-enrolled in Business Math. (Id. at 28.) He received a certificate of completion in Alternatives to Violence and Non-Violent Conflict Resolution. (Id. at 29.) Additionally, petitioner has completed a number of other anger management classes. (Id. at 29-30.)

A psychological report stated that a prior diagnosis that petitioner was manic-depressive or bi-polar was based on petitioner's history of drug abuse. (Id. at 32.) The current report suggested that petitioner did not harbor continued hostility or debasement. (Id. at 33.) Further, petitioner expressed proper remorse for his crime. (Id. at 33-34.) The report continued to state that there was no demonstration of aggressive behavior while petitioner had been incarcerated. (Id. at 34.) The report concluded that petitioner's criminal behavior appeared to be an aberration, secondary to substance abuse. (Id. at 34-35.) The report concluded that petitioner's potential for violence, assuming continued absence of drug use, was mid to low in comparison with the average inmate. (Id. at 35.)

The Board noted that petitioner had sufficient parole plans including a place to stay as well as employment. (Id. at 35-36.) Moreover, the Board recognized a number of letters from friends, family, and potential employers in support of petitioner. (Id. at 37-46.)

At the conclusion of the hearing, the Board denied parole for one year. (Id. at 78-79.) The Board based its decision on the underlying crime being "especially cruel and callous." (Id. at 75.) The Board noted that the crime was carried out in "execution style" attempted murder with a trivial motive. (Id. at 75-76.) The Board commended petitioner for his frankness and

---

[3] 128A's are citations for minor violations. In 1991, petitioner was cited for failing to report to work. In 1996, petitioner was cited for "talking during count." And, in 2001, petitioner was cited for failure to report to work. (Resp. Ex. 2; Ex. 1, Ex. C.)

honesty. (Id.) It further recognized petitioner's insignificant prior criminal record and commendable programming and education, as well as his positive psychological report and parole plans. (Id. at 76. 77-78.) However, acknowledging the three 115's and the three 128A's, the Board noted its concern about petitioner's 2004 115 report for refusal to obey. (Id. at 77.) The Board concluded that it needed to be confident that petitioner would be following rules in prison as well as out of prison. (Id. at 79.) In conclusion, the Board denied suitability for one year, advising petitioner that he was on the right track for achieving parole suitability.

Petitioner challenges the Board's denial of parole. Petitioner filed a state habeas petition with the superior court, which was denied on March 22, 2007. (Resp. Ex. 2.) Petitioner filed a state habeas petition with the state appellate court, which was denied on June 7, 2007. (Resp. Ex. 5.) Petitioner then filed a state habeas petition with the state supreme court, which was summarily denied on August 8, 2007. (Resp. Ex. 6.) Petitioner filed the instant federal habeas petition on November 1, 2007.

## DISCUSSION

### I. Standard of Review

This court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the

'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. Id. § 2254(e)(1).

Where, as here, the highest state court to consider the petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claim is the opinion of Orange County Superior Court.

**II. Issues Presented**

As grounds for habeas relief, petitioner alleges that: (1) the Board's finding of parole

unsuitability violated his right to due process because it relied on unchanging factors that petitioner would pose an unreasonable risk of danger to society; (2) petitioner's commitment offense was not a first degree murder; (3) there is no evidence in the record to permit petitioner's serious rules violation reports to be "some evidence;" and (4) there is no nexus between the commitment offense, petitioner's disciplinary record, and petitioner's current parole risk. (Petition, p. 6(a).)

Among other things, respondent contends that petitioner does not have a federal liberty interest in parole, and if he does, the only due process protections available are a right to be heard and a right to be informed of the basis for a denial. (Resp., p. 2.) In addition, respondents assert that the "some evidence" standard is not clearly established federal law in the parole context. (Id.) Because these contentions go to whether petitioner has any due process rights at all in connection with parole, they will be addressed first.

A. Respondent's Contentions

1. Liberty Interest

Respondent claims that petitioner has no liberty interest in parole. Respondent acknowledges the Ninth Circuit's decision in Sass v. California Bd. of Prison Terms, 461 F.3d 1123. 1125 (9th Cir. 2006), making clear that "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)," but preserves this argument because a petition for rehearing en banc is pending in Hayward v. Marshall, 512 F.3d 536 (9th Cir.), reh'g en banc granted, 527 F.3d 797 (9th Cir. 2008).

Respondent claims that under Sandin v. Conner, 515 U.S. 472 (1995), a federal liberty interest is created only when an atypical and significant hardship is created beyond ordinary prison life and that continued confinement under an indeterminate life sentence does not meet this criteria. (Resp., p. 2-3.) However, Sandin does not apply to parole decisions. See Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003) (Sandin "does not affect the creation of liberty interests in parole under Greenholtz and Allen."). Further, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). Petitioner cannot be denied a parole date without adequate procedural

protections necessary to satisfy due process. See Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007). Respondent's claim to the contrary is without merit.

2. Due Process Protections

Respondent argues that even if petitioner does have a liberty interest in parole, the only process he is entitled to under clearly established Supreme Court authority is limited to an opportunity to be heard and a statement of reasons for denial. (Resp., p. 3.) Respondent also claims that petitioner does not have a right to have the decision supported by "some evidence" because the Supreme Court developed the standard in a prison disciplinary hearing, not a parole hearing. (Id. at 6.) Further, respondent contends that the issue of whether the "some evidence" standard is proper under AEDPA is currently pending before an en banc panel of the Ninth Circuit. (Id. (citing Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2007), reh'g en banc granted, 527 F.3d 797 (9th Cir. 2008)).) However, unless or until the en banc court rules otherwise, the holdings in Biggs, Sass, and Irons are still the law in this circuit.

The Ninth Circuit has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the Board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Irons, 479 F.3d at 662 (applying "some evidence" standard used for disciplinary hearings as outlined in Superintendent v. Hill, 472 U.S. 445-455 (1985)). The evidence underlying the Board's decision must also have "some indicia of reliability." McQuillion, 306 F.3d at 904. The some evidence standard identified in Hill is clearly established federal law in the parole context for purposes of § 2254(d). See Sass, 461 F.3d at 1128-1129. Accordingly, the court rejects respondent's claim to the contrary.

B. Petitioner's Claims

As stated above, petitioner raises several claims relating to the denial of his parole. However, all of his claims can be addressed as one general claim that the Board's denial of parole was not supported by "some evidence" that petitioner "would pose an unreasonable risk of danger to society" and thus, the decision violated his right to due process.

The Supreme Court set forth the "some evidence" standard in Hill, which concerned the revocation of "good time" credits towards parole resulting from inmate misconduct. Hill, 472

U.S. at 455. The Court rested its holding upon the procedural due process foundation it laid in Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). As the Court noted, Wolff required, among other things, that an inmate receive "a written statement by the fact finder of the evidence relied on and the reasons" for the deprivation of his good time credits. Hill, 472 U.S. at 454 (citing Wolff, 418 US at 565). The Court then added to the foundation laid in Wolff, "[R]evocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 455 (quoting Wolff, 418 U.S. at 558).

The "some evidence" standard does not permit the court to "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994). Instead, the inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. While this test is stringent, it must at minimum protect an inmate's "strong interest in assuring that the loss of [parole] is not imposed arbitrarily." Id. at 454.

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the Board. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987). If the Board's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

When assessing whether a state parole board's suitability determination was supported by "some evidence" the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850. Under California law, prisoners serving indeterminate life sentences, like petitioner, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal. 4th 1061, 1069-70 (2005). At that point, California's parole scheme provides that the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b).

Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In making this determination, the Board must consider various factors, including the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, past and present attitude toward the crime and any other information that bears on the prisoner's suitability for release. See Cal. Code Regs. tit. 15, § 2402(b)-(d).

Under California law, the "core determination" regarding a prisoner's threat to public safety "involves an assessment of an inmate's *current* dangerousness." See In re Lawrence, 44 Cal. 4th 1181, 1205 (2008) (emphasis in original) (citing In re Rosenkrantz, 29 Cal. 4th 616 (2002) and In re Dannenberg, 34 Cal. 4th 1061 (2005)).

In petitioner's case, the Board conducted a hearing and concluded that petitioner posed "an unreasonable risk of danger to society or a threat to public safety if released from prison." (Transcript, p. 75.) The Board found petitioner unsuitable for parole because the offense was "carried out in an especially cruel and callous manner." (Id.) The Board stated that the offense was carried out in a manner similar to an execution-style murder. (Id.) The Board further found that the motive for the crime was trivial in relation to the offense. (Id. at 76.) The Board commended petitioner for his honesty and frankness. (Id. at 76.) The Board also acknowledged his above average work reports, his insignificant criminal history, and his achievements in participating in institution programming. (Id.) The Board observed that petitioner appeared to have grasped the tools necessary for him to succeed outside the prison and had viable post-prison plans. (Id. at 77-78.) And the Board acknowledged that petitioner's psychological report supported a finding of parole suitability. (Id.) The Board also commented that although petitioner had a reasonable disciplinary record, he did have three 115's and three 128A's. (Id.) Specifically, the Board expressed concern about petitioner's 115 refusal to obey. (Id.) And the Board commented that the district attorney and the victim voiced their opposition to a finding of parole suitability during the hearing. (Id. at 78.)

The superior court concluded that there was "some evidence" to support the Board's finding that petitioner was unsuitable for parole. (Resp. Ex. 2 (In re Jody Dion Patterson, Order Denying Habeas Corpus, Orange Court Superior Court, case no. M-11219 (March 22, 2007).) The court observed that the Board denied parole based on the commitment offense, petitioner's pattern of institutional misconduct,[4] and the district attorney's and victim's oppositions.[5] (Resp. Ex. 2, p. 1-2.)

Here, petitioner received a seven years to life sentence and has been in custody since 1991, serving approximately sixteen years -- over twice the minimum sentence -- at the time of the hearing before the Board. Therefore, unlike Biggs, Sass and Irons, petitioner had served more than his minimum seven-year sentence. Still, there is no Supreme Court precedent prohibiting a parole board from relying on the unchanging facts of a prisoner's crime even though the Ninth Circuit has cautioned that where the prisoner has served the minimum sentence and demonstrated "substantial evidence" of rehabilitation, reliance on unchanging facts could violate due process. Irons, 505 F.3d at 853-54.

There are a number of factors to be considered in assessing whether the Board's decision was supported by "some evidence" that petitioner would present an unreasonable danger to the public if released. Petitioner has made great strides in his attempts to improve himself while incarcerated, as shown by his many accomplishments and the Board's laudatory comments. On the other hand, the gravity of Petitioner's underlying offense can be considered in requiring a period of longer incarceration. See Cal. Penal Code § 3041(b). Here, as the Board noted, the commitment offense was committed in a dispassionate and calculated manner and petitioner's

---

[4] Despite the superior court's description of a "pattern of institutional misconduct," the Board's decision did not rely on any 115s or other disciplinary reports except for the one incurred in 2004.

[5] The Board's reliance on the district attorney's and the victim's expression of opposition to petitioner's suitability for parole is not "some evidence" demonstrating that the petitioner is currently dangerous if released on parole. See Rosenkrantz v. Marshall, 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal. 2006) (rejecting notion that a district attorney's opinion opposing parole, without more, can be sufficient to demonstrate "some evidence" under Hill); cf. In re Lawrence, 44 Cal. 4th at 1227.

motive was very trivial in relation to the offense. See Cal. Code of Regs., tit. 15, § 2402(c)(1). These facts alone amount to "some evidence" that petitioner would present an unreasonable threat to the public if released.

While the Board relied mainly upon the petitioner's underlying commitment offense, the issue for the instant federal petition is whether the state courts' rejection of petitioner's due process claim was contrary to, or an unreasonable application of, clearly-established Supreme Court authority. See 28 U.S.C. 2254(d)(1). It is true that the crime had been committed approximately 16 years prior to the underlying parole suitability hearing, which was more than double petitioner's minimum term at the time of the parole hearing. As expressed in Biggs, after passage of enough time such a factor ceases to amount to "some evidence" on its own.

Further, the court recognizes that "release on parole is the rule, rather than the exception." In re Smith, 114 Cal. App. 4th 343, 351 (2003). "[A] grant of parole is an integral part of the penological system intended to help those convicted of crime to integrate into society as constructive individuals as soon as possible and alleviate the cost of maintaining them in custodial facilities." People v. Vickers, 8 Cal. 3d 451, 458 (1972); see also Morrissey v. Brewer, 408 U.S. 471, 477 (1972). If he will pose no unreasonable risk to public safety, petitioner is entitled to be paroled and in fact, is well beyond the point at which he became entitled to have a parole date set. Cal. Pen. Code, § 3041(a). A continued repetition in the face of overwhelming evidence to the contrary that an inmate is considered too dangerous for parole because he committed a violent crime does not satisfy the mandates of due process.

However, while it is a close question as to whether enough time had passed in this case given the circumstances surrounding the attempted murder, whether the Board's decision was supported by "some evidence" is not a close call when the additional layer of deference in the "unreasonable application" standard is added. Indeed, when the constitutionality of the underlying decision is a close question, it is almost a foregone conclusion that it was reasonable for the state courts to hold that it was not unconstitutional. Therefore, the state courts' rejection of the this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability. See Rosas, 428 F.3d at 1232. Accordingly, any request for a COA is DENIED as unnecessary.

**CONCLUSION**

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying parole proceedings. Accordingly, the petition for a writ of habeas corpus is DENIED. In addition, a COA is DENIED as unnecessary. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/31/10

Ronald M. Whyte

RONALD M. WHYTE
United States District Judge